**STATE of Iowa, Appellee,**

v.

**Joachim Siegfried FUHRMANN, Appellant.**

**No. 59256.**

Supreme Court of Iowa.

Sept. 21, 1977.

John P. Churchman, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., J. Susan Carney, Asst. Atty. Gen., and Lyle A. Rodenburg, Council Bluffs, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

Defendant Fuhrmann appeals his convictions for first-degree murder (§ 690.1, The Code), robbery with aggravation (§ 711.2, The Code), and assault with intent to commit murder (§ 690.6, The Code). These charges stem from a Council Bluffs jewelry store robbery on August 7, 1975. In the robbery, store owner John Lucey was killed and his wife, Charlotte Jean Lucey, was assaulted. We affirm.

Defendant presented no evidence. The State's evidence disclosed defendant and his wife Marsha had visited the jewelry store prior to the robbery, expressing an interest in large diamonds. A larger selection of gems had been obtained by Mr. Lucey for defendant's inspection. The latter made an appointment to see Mr. Lucey at 7 p. m. on August 7, the night of the robbery.

At 6:30 p. m. that evening defendant, Marsha, and Joe Nuzum, Jr., picked up Lisa Kahn, age 14, to baby-sit with defendant's four-year-old daughter. They dropped Lisa off at the Fuhrmann apartment and left about 7 p. m.

Mrs. Lucey was present when the robbery occurred and testified to those events. Although she was typing in another room, she observed defendant and his wife arrive at 7:10 or 7:15 p. m. They met with Mr. Lucey in the salesroom. While Mrs. Lucey did not notice Joe Nuzum (a former employee) arrive, he apparently had been let in by defendant and was also in the salesroom.

Shortly, Mr. Lucey came down the hall from the salesroom saying, "Jean, hit the floor. It's Joe Nuzum. It's a rip-off. We've been had." Mrs. Lucey slid to the floor, face down. She was unable to see the robbers' faces but she recognized defendant's voice order her husband to tie her hands behind her back. After Mr. Lucey did this he unsuccessfully struggled with the intruder.

During this struggle Mrs. Lucey saw the intruder's arm holding a gun similar to a snub-nose .38 caliber revolver. She later identified the coat covering the arm as being the same as a coat owned by defendant.

Mrs. Lucey was then struck on the head by one of the robbers, but not rendered unconscious. Her husband was taken to another room. Mrs. Lucey heard him pleading for his life, then heard a muffled shot.

In a brief time a heavy person (presumably Joe Nuzum) got on Mrs. Lucey's back and placed a gun directly to her head. She recognized defendant's voice from the doorway yelling, "Do it. Do it. Do it." A shot was fired but Mrs. Lucey escaped serious injury. The robbers left with jewelry valued at approximately $139,000.

Later it was discovered Mr. Lucey had been shot in the head and died almost instantaneously. Apparently the murder weapon was an automatic pistol and not a revolver because shell casings were found on the floor near the body.

John Carpenter Peters, who had known defendant since the prior February or March, testified he had observed defendant with a .380 caliber Beretta (automatic) before the robbery. At about 1:30 a. m. on August 9, Peters discovered a note stuck in the back door of his apartment. The note requested Peters to come to the Fuhrmanns and to bring his swimming trunks, stating it was urgent.

Peters complied with this request. Fuhrmanns requested him to follow their car in his car. Fuhrmanns stopped on a small country road. Defendant led Peters into the woods and retrieved the merchandise from the jewelry robbery and placed it in a steel box. The box and a suit belonging to defendant were placed in Peters' car. Defendant told Peters to have the suit cleaned to remove bloodstains. The latter took the jewelry to his apartment. That evening the Fuhrmanns came over. Peters testified defendant then told him Nuzum shot Mr. Lucey in the head but that "Nuzum _____ up. Mrs. Lucey is still alive." They told Peters they threw the murder weapon into the Missouri River.

August 10, 1975, defendant and his wife were arrested. August 11 Peters notified the police he had information relating to the Lucey jewelry store robbery and killing. The stolen merchandise was recovered.

A county attorney's information filed October 17, 1975, charged defendant with the premeditated murder of John Lucey, robbery with aggravation, and assault on Charlotte Jean Lucey with intent to commit murder. The information was later amended to add felony-murder to the premeditated murder charge. The jury found defendant guilty on all three counts. His motion for new trial was overruled.

January 26, 1976, trial court sentenced defendant to life imprisonment at hard labor for murder, 25 years imprisonment for robbery, and 30 years imprisonment for assault.

Appealing, defendant contends trial court committed reversible error in six rulings described in the divisions which follow.

I. *Allowing the jury to see and permitting testimony concerning exhibits excluded from evidence.*

Defendant asserts he was prejudiced by the exhibition of and testimony relating to exhibit 33 (permit to buy), exhibit 41 (permit to possess), and exhibit 42 (.38 caliber revolver).

All concede the snub-nose .38 revolver was not the murder weapon. It was found in defendant's closet following his arrest. The baby-sitter, Kahn, testified a weapon which looked like this exhibit, and also an automatic, had been kept in a cabinet over the refrigerator in the Fuhrmann home. But on the night of the robbery, while looking for baby food, she observed the guns were not there. Mrs. Lucey testified this .38 revolver was "very similar" to one held by the intruder who scuffled with her husband. When the gun was re-offered at close of State's testimony, trial court sustained defendant's objections and admonished the jury to disregard all references to it.

Defendant moved in limine to prevent testimony relating to the two permits, which were issued to Marsha Fuhrmann for the purchase and possession of the .38 revolver. This motion was overruled. The exhibits were identified, offered, and objected to. The court reserved ruling. At close of State's evidence trial court sustained the objections and again admonished the jury to disregard any evidence concerning these permits.

■ Trial court has considerable discretion in determining the admissibility of demonstrative evidence. *State v. Badgett,* 167 N.W.2d 680, 688 (Iowa 1969). On the record in this case we do not believe trial court would have abused its discretion in overruling the objections to these exhibits.

■ Ordinarily weapons not used in the commission of a crime are inadmissible. *State v. Wallace,* 259 Iowa 765, 769–772, 145 N.W.2d 615, 618–620 (1966); 22A C.J.S. Criminal Law § 712c, at 965 (1961). But where there is sufficient proof to justify a reasonable inference a weapon was or may have been used in the perpetration of the offense, it is generally admissible in evidence. *State v. Nowlin,* 244 N.W.2d 596, 602 (Iowa 1976); see *State v. Shultz,* 231 N.W.2d 585, 588 (Iowa 1975); *State v. Kittelson,* 164 N.W.2d 157, 167 (Iowa 1969); *State v. Wallace,* supra, 259 Iowa at 769, 145 N.W.2d at 618; *Moore v. Illinois,* 408 U.S. 786, 799–800, 92 S.Ct. 2562, 2570, 33 L.Ed.2d 706, 716 (1972).

■ That the .38 revolver was not the murder weapon is not controlling. *State v. Nowlin,* supra, 244 N.W.2d at 602. The evidence generated an inference defendant carried this weapon in the jewelry store robbery. As it would not have been error to admit the gun and the associated permits, defendant cannot claim he was prejudiced by references to these exhibits in the course of testimony.

■ In any event, the striking of improper testimony ordinarily cures any error. Only in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained, despite its exclusion, is defendant denied a fair trial and entitled to a reversal. *State v. Johnson,* 243 N.W.2d 598, 605 (Iowa 1976); *State v. Mattingly,* 220 N.W.2d 865, 870–871 (Iowa 1974). In our view this was not one of those extreme situations in which the jury would ignore trial court's admonition.

We find no reversible error in this respect.

II. *Not requiring the State to elect between the alternative theories of murder incorporated in the amended information.*

Count I of the county attorney's information originally charged defendant with:

"murder, for that the said defendant did on the 7th day of August, 1975, wilfully, deliberately, and with premeditation and malice aforethought kill John Lucey in violation of Section 690.1, and as punishable by Section 690.2, 1975 Code of Iowa."

The amendment added to Count I the following:

"or did in the perpetration or attempt to perpetrate a robbery, kill John Lucey. All in violation of Section 690.2, 1975 Code of Iowa."

Trial court, ruling to permit the amendment, found the amendment "does not change the nature of the charge or constitute undue surprise as to the Defendant, and is in proper form."

Before jury selection and again at close of evidence, defendant made a motion to require the State to elect between its alternative theories of murder alleged by the amended information. Defendant asserts trial court's adverse ruling on this motion was error. We disagree.

Section 773.25, The Code, provides:

"No indictment for an offense which may be committed by the doing of one or more of several acts, or by one or more of several means, or with one or more of several intents, or with one or more of several results, shall be invalid or insufficient for the reason that two or more of such acts, means, intents, or results are charged in the disjunctive or alternative."

See *State v. Aldrich,* 231 N.W.2d 890, 896 (Iowa 1975); *State v. Crutcher,* 174 N.W.2d 449, 451 (Iowa 1970).

■ There is but one crime called murder in Iowa. *State v. Nowlin,* supra, 244 N.W.2d at 604. First-degree murder may be committed in several ways. § 690.2, The Code. Therefore, the amendment alleging an alternative method by which defendant committed first-degree murder was authorized by § 773.25, supra.

Defendant's reliance on *State v. Gilroy,* 199 N.W.2d 63 (Iowa 1972), is misplaced. In *Gilroy* the defendant was tried and convicted of murder in the perpetration of robbery, and of premeditated murder. He was sentenced to two concurrent life sentences for the one homicide. We annulled one of the murder judgments on the ground the sentence constituted an impermissible double punishment. 199 N.W.2d at 68. In the case before us, the different theories of murder were set out in the alternative, connected by the disjunctive "or." There

was only one murder conviction and only one life sentence imposed. *Gilroy* has no application in the circumstances before us.

■ As a subsumed issue, defendant argues trial court should not have permitted the State to amend the information. Section 773.43, The Code, authorizes the court, on motion by the State, to permit amendments "to correct errors or omissions in matters of form or substance." Such amendments shall not be permitted when the effect is to charge defendant with a different offense.

■ We already have said the amendment charged no different offense. The question remains whether defendant was prejudiced by allowing the amendment. Here defendant was fully alerted to the State's evidence and the alleged factual situation surrounding the homicide by extensive minutes of testimony and statements of witnesses attached to the information. He cannot claim surprise. Nor does he allege he would have changed his trial preparation or strategy given earlier knowledge of the amended petition. See *State v. Sheffey,* 234 N.W.2d 92, 95–96 (Iowa 1975).

We find no reversible error in these issues raised by defendant.

III. *Admitting into evidence of photographs of the murder victim.*

The State offered into evidence four black-and-white photographs of Mr. Lucey, taken by a police photographer at the scene of the crime.

Defendant made no objection to the first photo offered, but objected to the remaining three as repetitious, cumulative, and inflammatory. The objections were overruled. Defendant asserts the ruling constituted reversible error.

■ Admission of photographs is largely within the sound discretion of trial court. *State v. Hall,* 235 N.W.2d 702, 720 (Iowa 1975); *State v. Albers,* 174 N.W.2d 649, 657 (Iowa 1970). The test of admissibility is relevancy. *State v. Lass,* 228 N.W.2d 758, 771 (Iowa 1975). If photographs are relevant, trial court still must

exercise discretion in deciding whether the probative value of the exhibits outweighs the prejudice which would be caused by their admission into evidence. *State v. Brewer,* 247 N.W.2d 205, 214 (Iowa 1976); *State v. Fryer,* 243 N.W.2d 1, 9 (Iowa 1976).

■ The photographs defendant objected to disclosed the location of the body, Mr. Lucey's hands tied behind his back, the bullet wound in the back of his head, the cushions allegedly used to muffle the shot, and a shell casing partially covered by the body. These pictures illuminated the testimony relating to the cause of death, premeditation, location of shell casings, and the muffled shot heard by Mrs. Lucey. See *State v. Nowlin,* supra, 244 N.W.2d at 601; *State v. Hummell,* 228 N.W.2d 77, 83 (Iowa 1975).

The pictures were not duplicitous. They were taken from various angles and ranges and show different aspects of the crime. Their relevancy is not outweighed by the potential prejudice to defendant's case. The grisly nature of these photographs is an unavoidable result of the nature of the killing. *State v. Fryer,* supra, 243 N.W.2d at 7; see Annot., Evidence—Photograph of Corpse, 73 A.L.R.2d 769 (1960).

We find no merit in this issue raised by defendant.

IV. *Admission into evidence of message written by defendant's wife.*

Exhibit 35 was the "urgent" note left at Peters' back door, instructing him to come to the Fuhrmann home. The State proved it was written by Marsha, defendant's wife.

Defendant objected to admission of exhibit 35 several times on the ground "the testimony is that Exhibit 35 is not the handwriting of this defendant, and that the person who wrote Exhibit 35 is not on trial at this time * * * for the further reason it is immaterial, actually irrelevant to any issue in this case."

■ A writing is not necessarily inadmissible merely because it is not written by defendant. Defendant may have thought the exhibit was hearsay and not admissible as an admission because it was not written by the defendant. But this reasoning was not articulated to the trial court.

■ The first portion of defendant's objection was inadequate to alert trial court to any ground sufficient to exclude the offered exhibit. See *State v. Welsh,* 245 N.W.2d 290, 295 (Iowa 1976).

■ The second portion of the objection was that the note was irrelevant and immaterial. This objection was sufficient to raise the issue of the probative value of this evidence in relation to the purpose for which it was offered. *Wiedenfeld v. Chicago & N. W. Transp. Co.,* 252 N.W.2d 691, 699 (Iowa 1977); *State v. Clay,* 213 N.W.2d 473, 477 (Iowa 1973).

■ Of course, a determination as to relevancy and materiality rests largely in trial court's discretion. *Wiedenfeld,* supra; *Trushcheff v. Abell—Howe Co.,* 239 N.W.2d 116, 125 (Iowa 1976). The distinction between materiality and relevancy is drawn in *Trushcheff,* supra, and *Vine Street Corp. v. City of Council Bluffs,* 220 N.W.2d 860, 862 (Iowa 1974), and will not be repeated here.

■ The major issue in this case was whether defendant had participated in the jewel robbery. It was therefore pertinent to inquire about the location of the missing jewels. Because these were discovered in Peters' possession, it became important to examine any link between defendant and Peters relating to transfer of the stolen goods. The note written by defendant's wife established a connection between defendant and Peters, and thus was material to the main issue in dispute. See *Vine Street Corp. v. City of Council Bluffs,* supra, 220 N.W.2d at 862. We also view the note as relevant because it made Peters' story more probable than it would have been without the evidence. See *Wiedenfeld,* supra, 252 N.W.2d at 699; *In re Estate of Poulos,* 229 N.W.2d 721, 726 (Iowa 1975).

Trial court properly overruled defendant's objection to exhibit 35.

V. *Submission to the jury of instruction 11 relating to the alternative theories of the commission of the murder.*

 Instruction 11 stated the propositions the State was required to prove in order for defendant to be found guilty. It set out the alternative propositions relating to the manner in which the murder was committed—with malice aforethought and willfully, deliberately and premeditatedly, and with specific intent to kill, *or* with malice aforethought in the perpetration of, or in an attempt to perpetrate, a robbery.

Defendant objected to this instruction "with respect to pleading in the alternative in that it unduly emphasizes Count I which was pleaded in the alternative, it gives too much consideration to it * * *."

Defendant was attempting to preserve his objection to the amended county attorney's information. Our holding in division II resolves this issue. Given the evidence in the case and the various ways first-degree murder may be committed, trial court was required to instruct on the alternative propositions. See § 690.2, The Code; *State v. Jochims,* 241 N.W.2d 25, 27 (Iowa 1976); *State v. Hall,* supra, 235 N.W.2d at 725; *State v. Lamar,* 210 N.W.2d 600, 605–606 (Iowa 1973).

VI. *Overruling defendant's new trial motion.*

In the preceding divisions we have discussed the only issues raised in defendant's new trial motion which were worthy of consideration. Defendant points to no other grounds in his motion which would have justified a favorable ruling below.

What we said in *State v. Sheffey,* supra, 234 N.W.2d at 98, is applicable here:

"Nothing in the record leads us to conclude defendant did not get a fair trial, nor does defendant allege specific grounds for this argument. Trial courts have considerable discretion in granting or denying motions for new trial. *State v. Kramer,* 231 N.W.2d 874 (Iowa 1975); *State v. Dalgliesh,* 223 N.W.2d 627 (Iowa 1974); *State v. Parkey,* 200 N.W.2d 518 (Iowa 1972). Unless there clearly ap-

pears to be a miscarriage of justice this discretion will rarely be disturbed. *State v. Russell,* 259 Iowa 1133, 147 N.W.2d 22 (1966). It will not be disturbed here."

The district court judgment and sentences are affirmed.

AFFIRMED.