STATE of Iowa, Appellee,

v.

Marsha FUHRMANN, Appellant.

No. 59482.

Supreme Court of Iowa.

Jan. 18, 1978.

Rehearing Denied Feb. 17, 1978.

Bruce D. Fleming and Oliver O. Over, Jr., Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., J. Susan Carney, Asst. Atty. Gen., and Lyle A. Rodenburg, County Atty., for appellee.

HARRIS, Justice.

The defendant appeals her convictions of robbery with aggravation in violation of § 711.2, The Code, assault with intent to commit murder in violation of § 690.6, The Code, and first-degree murder in violation of § 690.2, The Code. (All Code references herein are to the Code 1975.) Defendant was the wife of Joachim Siegfried Fuhrmann, one of two other co-defendants against whom charges were separately filed. See *State v. Fuhrmann,* 257 N.W.2d 619 (Iowa 1977). We affirm the trial court.

The evidence offered by the State disclosed substantially the same facts and circumstances outlined in our opinion in *State v. Fuhrmann,* supra. John Lucey, a prominent jeweler in Council Bluffs, was at his store on the evening of August 7, 1975 with his wife, Charlotte Jean Lucey. Three people came to the store at about 7:00 p. m.:

defendant; her husband; and Joe Nuzum. Nuzum was a former employee of the Luceys. Defendant and her husband had been in the store about a week and one half previously. The day before the shooting defendant's husband came to the store alone to discuss diamonds larger than those ordinarily in stock, which they had previously discussed. When the Fuhrmanns arrived they were admitted by Mr. Lucey while his wife was in another room writing a letter and watching a TV show. Mrs. Lucey saw all three enter and observed them discussing something with her husband. Later she wheeled her chair around and heard people running down the hall. Her husband came in the room and said, "Jean hit the floor. It is Joe Nuzum. It is a rip-off and we have really been had."

Mr. Lucey was then directed by Mr. Fuhrmann to tie up his wife and have her lie on the floor. A few minutes later someone hit her on the head. She lay very still pretending to be knocked out. From her position on the floor she could hear boxes from the safe in the other room being tossed about. She heard a female voice say, "Joe, leave that safe. Forget it. Come on." Later she heard a muffled shot and then the robbers running. Then someone got on her back and placed a gun directly on her head. She heard Mr. Fuhrmann say, "Do it. Do it. Do it." She believes the person on her back was a man because of the weight. A shot rang out in her room but did not hit her. Apparently the person holding the gun decided for some reason not to kill her. After the three ran away Mrs. Lucey got up and called the police.

Because of extended publicity defendant moved for a change of venue. She wished to have the trial moved outside the 4th judicial district. The trial court ruled trial could be had in the 4th judicial district but moved it from Council Bluffs to Sidney, in Fremont County, Iowa.

Defendant was first admitted to bail. After conviction of her two co-defendants, defendant's bail was revoked and she was taken into custody. Three days later she was transferred to the Monona County jail at Onawa. Following her jury conviction defendant has brought this appeal in which she raises six assignments of error.

I. In her first assignment defendant contends withdrawal of her bail before conviction contravened her rights under the Iowa Constitution and was an infringement of her right to counsel under the Sixth Amendment of the United States Constitution.

The argument becomes complex. Defendant cites Art. I, § 12, of the Iowa Constitution which provides in material part: " * * * All persons shall, before conviction, be bailable, by sufficient sureties, except for capital offenses where the proof is evident, or the presumption great." Defendant then points to the fact § 690.5, The Code, (death penalty) has been repealed. Defendant concludes all persons are bailable before conviction since there are no longer "capital offenses" in this state.

Defendant is faced with § 763.1, The Code, which has been amended to provide that all offenses are bailable except for murder in the first-degree and kidnapping for ransom when proof is evident or presumption great. But defendant maintains § 763.1, as amended, is in conflict with Art. I, § 12 of the Iowa Constitution.

We need not and should not[1] consider defendant's claim § 763.1 conflicts with Art. I, § 12. Under the facts presented it is apparent defendant was admitted to bail. Defendant's pretrial incarceration was not because she was *denied* bail under § 763.1 but because she was *recommitted* after bail under chapter 767, The Code.

If defendant's first assignment is grounded on the claim she was improperly recommitted under chapter 767 her argument

---

1. An appellate court should refrain from a constitutional analysis of statutes if a case may be disposed of on other grounds. *Ashwander v. TVA*, 297 U.S. 288, 346–348, 56 S.Ct. 466, 482– 484, 80 L.Ed. 688, 707–712 (1936); *Motor Club of Iowa v. Dept. of Transp.*, 251 N.W.2d 510, 519 (Iowa 1977).

fails under our holding in *State v. Beyer*, 258 N.W.2d 353, 356 (Iowa 1977). In *Beyer* we held:

"Trial court's bail ruling does not present an issue of substantial public interest warranting decision on the merits. Nor would even illegal detention in and of itself void a subsequent conviction. (Authorities).

"On the other hand, the larger issue would not be moot if trial court erroneously denied bail and thereby prejudicially handicapped defendant's trial preparation. (Authority)." 258 N.W.2d at 356.

■ We turn then to a consideration of defendant's claim she was denied effective access to counsel by reason of her recommitment. In recommitting defendant the trial court ordered:

"That the defense counsel should be permitted full access to the defendant at any and all times reasonable under the circumstances, and that any failure on the part of the person or persons having custody of the defendant to permit such access may be reported to the court for the purpose of permitting such additional orders to be entered allowing for full and adequate access for trial preparation."

For such period of time as defendant remained in the Council Bluffs jail the court order provided: " * * * the Council Bluffs police department and other authorities who have custody of [defendant] shall provide a private room with adequate chairs and table for conferences upon request of her attorney."

The matter was somewhat complicated by the ruling of the trial court which denied defendant's application for change of venue outside the 4th judicial district but did transfer trial to Fremont County. For some reason not appearing in the record defendant was thereafter held pending trial in the Monona County jail at Onawa. We note the Monona County jail and the Fremont County jail, though in opposite directions from Council Bluffs, are about equidistant from the Council Bluffs offices of defendant's counsel. It seems the only possible impediment to access of counsel was counsel's inability or unwillingness to drive to Onawa. This does not amount to a denial of access to counsel. *State v. Kimball*, 203 N.W.2d 296, 299 (Iowa 1972). Defendant's first assignment is without merit.

II. Defendant's second assignment challenges the admission of photographs into evidence at her trial. The identical issue was raised by defendant's husband in *State v. Fuhrmann*, supra, 257 N.W.2d at 624. Under the principles therein stated we find no error.

■ III. In her third assignment defendant complains of the trial court's refusal to give her requested instruction on accessory after the fact. It is unnecessary to reach the substance of defendant's legal argument under this assignment. In her brief and argument defendant freely concedes the substance of her requested instruction was included in other instructions given by the trial court. Defendant states: "And while the given instructions, defining aiding and abetting with knowledge and premeditation cover the bases, the instruction on accessory after the fact is so dramatically better, that it was in error to deny its request."

It is well settled that when a point raised in a requested instruction is otherwise properly covered in instructions actually given the requested instruction may properly be refused. *State v. Tensley*, 249 N.W.2d 659, 662 (Iowa 1977); *State v. Hall*, 235 N.W.2d 702, 725 (Iowa 1975). There was no reversible error.

IV. In her fourth assignment defendant argues it was prejudicial error for the trial court to refer to defendant's husband and to Joseph Edward Nuzum, Jr. by their proper names in various instructions. Defendant requested that the words "any person" be substituted in place of the proper names of Fuhrmann and Nuzum.

She argues, if she were guilty at all, it was only as an accessory after the fact and by reason of her presence when the crimes were committed. Defendant believes the repetition of the names was prejudicial to her.

■ We find the contention without merit. A court must instruct the jury on the law applicable to the facts as supported by the evidence. *State v. Watts*, 244 N.W.2d 586, 590 (Iowa 1976) and authorities. We believe the substitution of the words "any persons" for the proper names of Fuhrmann and Nuzum would have confounded and confused the issues presented to the jury. The request was properly refused.

■ V. Defendant's fifth assignment is addressed to remarks made by the prosecutor during his final argument. The challenged remarks were precipitated by an argument of defense counsel in closing argument.

Defense counsel sought to demonstrate defendant's unwilling involvement by emphasizing there were only two pair of gloves in evidence. The obvious inference which defendant's counsel sought to draw was that the two pair of gloves would have been used by defendant's husband and Nuzum. Defendant's counsel argued in part: "There's only two pairs of gloves. And there's two men. And every bit of testimony that was given today by the State implicates two men doing these acts, but not a bit as to what Marsha was supposed to have done before they went up there. * * *."

In his closing argument the prosecutor referred to the gloves in part as follows:

" * * * Let's pair these gloves up and see if there is evidence here. Take the gloves out and pair them up. Here is one pair; and here is another pair. Is there anything odd or unusual about them? * *.

" * * * You look at the size of those men in those pictures and you look at the size of these gloves here, and the size of this pair here. Then you decide who the gloves fit. * * *."

We believe the argument of the prosecutor was proper. It falls well within the rule explained in *State v. Pepples*, 250 N.W.2d 390, 396 (Iowa 1977):

" * * * [C]ounsel may reasonably display exhibits which are in evidence. (Authorities). This includes the right to use such exhibits demonstratively so long as the demonstration is for illustrative purposes and does not constitute the creation of new evidence. (Authorities). Of course, illustrations and demonstrations, like verbal communication, must be kept within proper limits."

The argument was within proper limits. No error appears.

■ VI. In her final assignment defendant asserts the mandatory sentencing requirements of § 690.2, The Code, are unconstitutional as applied to her " * * * in that the Iowa legislature oversteps its functions and authority in grouping a broad range of acts under one classification and pre-sentencing all persons convicted under the first-degree murder classification to the state's most severe penalty without regard for the specific facts and mitigating circumstances. Such a blind imposition of imprisonment for life at hard labor in the penitentiary is cruel and unusual punishment to all except those whose actions completely entail the highest sanctioned crime."

We may pass serious reservations on the question of whether defendant properly preserved error on this assignment. Taking the facts in the light most consistent with the verdict, defendant does not emerge as an innocent bystander, unwillingly drawn into the crimes. She purchased the weapons used in the crimes. She was at the scene of the crimes and participated before, during, and after their completion. The offenses were of extreme brutality and violence. The punishment prescribed by the court was in no way disproportionate to the offense.

■ A state has wide latitude in fixing punishment for crimes. *Williams v. Illinois*, 339 U.S. 235, 241, 90 S.Ct. 2018, 2022, 26 L.Ed.2d 586, 593 (1970). Our legislature has the power and the responsibility to define crimes and prescribe punishment. *State v. Hall*, 227 N.W.2d 192, 193 (Iowa 1975). Life imprisonment for first-degree murder is not so disproportionate to the seriousness of the offense as to shock the

conscience or sense of justice. See *Coon v. United States*, 360 F.2d 550, 555 (8 Cir. 1966), cert. denied, 385 U.S. 873, 87 S.Ct. 145, 17 L.Ed.2d 100. The assignment is without merit.

AFFIRMED.