At his third trial, a jury convicted Vernon Madison of the capital murder of a peace, or law enforcement, officer. The trial court sentenced Madison to death. The Court of Criminal Appeals affirmed. Madison v. State, 718 So.2d 90 (Ala.Crim.App. 1997). On certiorari review, we examine a single issue: Whether the trial court deprived Madison of his constitutional rights by not requiring the jury to reach a unanimous agreement on which of two alternative theories supported his conviction for the capital offense. Because we hold that the requirement for unanimous verdicts does not extend to unanimous agreement on the theory or means by which a defendant committed the crime, we affirm the judgment of the Court of Criminal Appeals.
 I.
At Madison's first trial, a jury convicted him of capital murder and the trial court sentenced him to death. The Court of Criminal Appeals reversed his conviction and remanded the case for a new trial. Madison v. State, 545 So.2d 94 (Ala.Crim.App. 1987). At Madison's second trial, a jury again convicted him of capital murder, and the trial court again sentenced him to death. The Court of Criminal Appeals again reversed his conviction and remanded the case for a new trial. Madison v. State, 620 So.2d 62
(Ala.Crim.App. 1992).[1]
The evidence presented at Madison's third trial showed that on April 18, 1985, Cpl. Julius Shulte, an officer of the Mobile Police Department, was dispatched to Cheryl Green's home to investigate a report that Green's 11-year-old daughter was missing. Corporal Shulte was not in his police uniform and was not in a marked car. He was, however, wearing a Mobile Police Department badge. Madison, who until a few days earlier had been living with Green, came to Green's home, before Cpl. Shulte arrived, to retrieve personal items that Green had thrown of the house. By the time Cpl. Shulte arrived at Green's home, Green's daughter had already returned. Nonetheless, neighbors asked Cpl. Shulte to stay until Madison had left Green and her child safely alone.
Green and Madison came out of the house and talked to Cpl. Shulte, who never got out of his car. After a brief conversation with Cpl. Shulte, Madison appeared to leave. Actually, he walked about a block away and returned with a .32 caliber pistol; he covertly walked up behind Cpl. Shulte, while Cpl. Shulte was still in his car. Madison fired two shots at near point-blank range, one into the back of Cpl. Shulte's head and one into his left temple. Madison then shot Green twice in the back and fled the murder scene. He subsequently told an acquaintance, "I just killed a cop."
The indictment read to Madison's third jury charged him with the capital murder of a law enforcement officer who was "on duty" or who was performing some "official or job-related act." Section13A-5-40(a)(5), Ala. Code 1975, defines the following capital offense:
 "Murder of any police officer, sheriff, deputy, state trooper, federal law enforcement officer, or any other state or federal *Page 106 
peace officer of any kind, or prison or jail guard, while such officer or guard is on duty, regardless of whether the defendant knew or should have known the victim was an officer or guard on duty, or because of some official or job-related act or performance of such officer or guard."
(Emphasis added.) The indictment contained two counts. The counts set forth alternative theories for conviction. Count one charged Madison with the capital murder of a peace, or law enforcement, officer while the officer was on duty. Count two charged Madison with the capital murder of a law enforcement officer who was performing an official or job-related act. Both counts went to the jury.
The third jury unanimously convicted Madison of the capital offense of murdering a law enforcement officer in violation of § 13A-5-40 (a)(5). The trial court sentenced Madison to death. We affirm the judgment of the Court of Criminal Appeals with respect to all issues, and we specifically address one: Whether the trial court deprived Madison of his constitutional rights by not requiring the jury to reach a unanimous agreement that the murder took place (1) while Cpl. Shulte was "on duty," or (2) because he was engaged in an official act.
 II.
Madison contends that the trial court, by allowing the jury to consider both counts, rather than requiring the State to elect one of the two counts to submit to the jury, violated his right to a unanimous verdict which is guaranteed by various constitutional provisions, including the Sixth and Fourteenth Amendments to the Constitution of the United States. He argues that because the jury did not specify the count on which it found him guilty, neither he nor this Court can know whether he was convicted by a jury that was unanimous as to a single count.
The State contends that its purpose in charging Madison in a two-count indictment was to meet every probable contingency of the evidence. The State argues that § 13A-5-40(a)(5) states only one offense (the capital murder of a law enforcement officer) and states two alternative theories ("while [the officer . . . is on duty" or "because of some official or job-related act") on which the jury may base its conviction. Thus, the State argues, the trial court did not err in refusing to require it to elect which count would go to the jury. We agree.
The Supreme Court of the United States has held that the Sixth Amendment right to a jury trial guarantees a defendant the right to a unanimous verdict in a federal trial.[2] Andres v. UnitedStates, 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948). However, the Supreme Court has held that, at least in noncapital cases, neither the Sixth Amendment nor the Due Process Clause of the Fourteenth Amendment guarantees a defendant the right to a unanimous jury verdict in a state trial.[3] See Johnson v.Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972);Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184
(1972).[4]
In Schad v. Arizona, 501 U.S. 624, 629, 111 S.Ct. 2491,115 L.Ed.2d 555 (1991), a plurality of the Supreme Court avoided extending the federal unanimity requirement to a state capital defendant, by concluding that even if the unanimity requirement applied it would *Page 107 
not provide relief to the defendant.[5] The defendant in Schad,501 U.S. at 628, 111 S.Ct. 2491, was indicted by a state grand jury for capital murder, which the relevant statute defined as "murder which is . . . wilful, deliberate or premeditated . . or which is committed . . . in the perpetration of, or attempt to perpetrate, . . . robbery." (Quoting Ariz.Rev.Stat. Ann. § 13-452 (Supp. 1973).) At trial, the prosecution sought to prove the capital murder offense by advancing both a theory of premeditated murder and one of felony murder. Shad,501 U.S. at 629, 111 S.Ct. 2491. The jury returned a general verdict of guilty, without specifying whether it had reached a unanimous agreement either as to premeditated murder or as to felony murder. Id. Responding to the defendant's argument that the federal unanimity requirement should be applied to state capital defendants, the Supreme Court stated: "Even assuming a requirement of jury unanimity arguendo, that assumption would fail to address the issue of what the jury must be unanimous about." Id. at 630, 111 S.Ct. 2491. The Supreme Court emphasized that "`there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" Id. at 632, 111 S.Ct. 2491 (citation omitted).
The rationale of Schad has been adopted in numerous jurisdictions. See People v. Milan, 9 Cal.3d 185, 194,507 P.2d 956, 959, 961-62 (1973) (holding that there is no error in instructing the jury on alternative theories if there is sufficient evidence that the defendant committed first-degree murder); People v. Travis, 170 Ill. App.3d 873, 891, 121 Ill.Dec. 830, 841, 525 N.E.2d 1137, 1148 (stating that the jury must be unanimous on the ultimate question of guilt or innocence, not on the theory applied), appeal denied, 122 Ill.2d 590, 125 Ill.Dec. 232, 530 N.E.2d 260 (1988), cert. denied, 489 U.S. 1024,109 S.Ct. 1149, 103 L.Ed.2d 209 (1989); State v. Fuhrmann,257 N.W.2d 619, 626 (Iowa 1977) (holding that first-degree murder is one crime, although the defendant can commit the crime in several ways); State v. Wilson, 220 Kan. 341, 345, 552 P.2d 931, 936
(1976) (holding that the accused cannot impeach a verdict on the basis that the jury could not agree on the theory of first-degree murder), overruled on other grounds by State v. Quick,226 Kan. 308, 597 P.2d 1108 (1979); Commonwealth v. Devlin, 335 Mass. 555,565-68, 141 N.E.2d 269, 274-76 (1957) (holding that a homicide conviction is acceptable even if the jury does not specify a theory); People v. Embree, 70 Mich. App. 382, 384, 246 N.W.2d 6, 7
(1976) (holding that when the evidence shows that the defendant is guilty of premeditated and felony murder, a jury instruction on unanimity is irrelevant); State v. Buckman, 237 Neb. 936, 942,468 N.W.2d 589, 593 (1991) (holding that the jury need agree only that the defendant committed first-degree murder, not on the theory by which it reached the verdict); State v. Tillman,750 P.2d 546, 563-65 (Utah 1987) (holding that the jury need not agree on the theory supporting the conviction if there is sufficient evidence to support either theory); but see State v.Murray, 308 Or. 496, 782 P.2d 157 (1989) (holding that the trial court erred in giving jury instructions that offered alternative theories of murder).
Like the claim of the defendant in Schad, Madison's claim may be assessed without addressing the question whether the federal unanimity requirement applies to capital defendants in state cases, but by addressing the analytical focal point of the unanimity requirement, that is, the offense. See Schad,501 U.S. at 630, 111 S.Ct. 2491.
Section 13A-5-40(a)(5) defines the single capital offense of the murder of a law enforcement officer, but allows as the basis of the conviction two alternative theories of proof: (1) the theory that the murder was committed while the officer was "on duty"; or (2) the theory that the murder was committed because of "some official or job-related act." See generally Tucker v.State, 537 So.2d 59, 61 (Ala.Crim.App. 1988) ("[The indictment] charged only one offense — capital *Page 108 
murder of a peace officer — which was committed for one of two reasons: either because the officer was trying to arrest [the defendant's] stepmother or because the officer was trying to arrest [the defendant]."); see also Schad, 501 U.S. at 636,111 S.Ct. 2491 ("If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law."). The jury was required to be unanimous only as to its verdict finding that Madison intentionally murdered a law enforcement officer in violation of § 13A-5-40(a)(5), not as to whether the murder occurred while the law enforcement officer was on duty or occurred because of an official act on the part of the officer.[6] See Schad, 501 U.S. at 629, 111 S.Ct. 2491.
The jury rendered a unanimous verdict finding Madison guilty of the offense of murdering a law enforcement officer as that offense is defined by § 13A-5-40(a)(5). The trial court did not err in refusing to require the State to elect a single count, or theory, on which the jury was required to agree. Accordingly, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, and KENNEDY, JJ., concur.
COOK, J., concurs in the result.
[1] The Court of Criminal Appeals reversed Madison's first conviction based on the State's use of peremptory strikes in a racially discriminatory manner in violation of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct 1712, 90 L.Ed.2d 69 (1986). The Court of Criminal Appeals reversed Madison's second conviction based on the admission of expert-witness testimony founded on facts outside the record, in violation of Ex parte Wesley,575 So.2d 127 (Ala. 1990).
[2] The Sixth Amendment to the Constitution of the United States provides:
 "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."
(Emphasis added.)
[3] The Fourteenth Amendment provides in pertinent part:
 "No State shall . . . deprive any person of life liberty, or property, without due process of law. . . ."
(Emphasis added.)
[4] A plurality of the Supreme Court has noted that a defendant's right to a unanimous jury verdict "is more accurately characterized as a due process right than as one under the Sixth Amendment." Schad v. Arizona, 501 U.S. 624, 634, n. 5,111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).
[5] We note that regardless of whether the federal right to a unanimous verdict extends to Alabama capital defendants, the Constitution of Alabama of 1901 has long provided criminal defendants a parallel guaranty of a unanimous jury verdict. SeeBaader v. State, 201 Ala. 76, 78, 77 So. 370, 372 (1917): Brownv. State, 45 Ala. App. 391, 394-95, 231 So.2d 167, 169-70 (1970),Dixon v. State, 27 Ala. App. 64, 73, 167 So. 340, 348 (1936).
[6] In Schad, 501 U.S. at 649-50, 111 S.Ct. 2491, Justice Scalia, concurring in part of the judgment, observed:
 "[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission. . . . That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict. When a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconsious and set the fire to kill her."