# IN THE COURT OF APPEALS OF IOWA

No. 16-0162
Filed May 3, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NGOR MAKUEY,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell,

Judge.


Defendant appeals from his convictions for murder in the first degree,

robbery in the first degree, and assault with intent to commit serious injury.

**AFFIRMED.**


Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg,

Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.


Considered by Potterfield, P.J., Tabor, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Ngor Makuey appeals from his conviction of murder in the first degree, robbery in the first degree, and assault with intent to commit serious injury and the sentences imposed following a bench trial. We affirm Makuey's convictions and sentence.

## I. Facts and Proceedings

Ruppert and Harriet Anderson, residents of Des Moines, had an animal-boarding business operated by their grandson that was adjacent to their home. Ruppert was ninety-seven years old and Harriet was ninety-two on July 2, 2014, when they received a knock at their door. Harriet assumed someone was wanting to pick up an animal and opened the door. She observed a young man and told him the kennel was closed, but the man, later identified as Ngor Makuey, pushed her aside and entered the residence. He hit Ruppert twice on the head with an instrument he held in his hand, later determined to be a metal spatula. He then hit Harriet with the spatula and knocked her down. Harriet was able to retrieve a telephone by pulling on the cord and called 911.

The police arrived, and a young man wearing a gray hooded sweatshirt was observed outside the Anderson home but near its entry door. When questioned by an officer, he advised he was picking up a dog. Two more officers soon arrived, and a cameraman from the television show COPS was traveling with them. The cameraman was operating his camera when he arrived at the house. By coincidence, the video reflected the young man who had been near the house. Both Harriet and Ruppert were taken to the hospital where Harriet

was stitched up and eventually released, but Ruppert died. The medical examiner determined Ruppert died from a blunt force trauma to the head.

By use of the video, Makuey was identified as the young man near the Anderson home. A blood-stained spatula, sweatshirt, and shorts were retrieved from Makuey's residence, and the blood stains matched Harriet's blood type. Pieces of wood, which were identified as the handle to the spatula, were recovered at the Anderson home. It was discovered that a jewelry box Harriet kept on a dresser had been removed and opened, but nothing had been taken.

Makuey was arrested and charged with murder in the first degree, attempted murder, robbery in the first degree, and burglary in the first degree. Makuey waived his right to a jury trial and was tried to the court. Makuey put forth a defense of insanity, and his expert witness, Dr. Lewis Rosell, diagnosed Makuey as suffering schizophrenic spectrum and other psychotic disorders and further testified that Makuey was not able to distinguish right from wrong or control his behavior on the date of the incident. The State called Dr. Tim Kockler, who reviewed Dr. Rosell's report and criticized his conclusions in several respects. The State also called Dr. Michael Taylor, who diagnosed Makuey as having a psychotic disorder but nevertheless stated that, on the date in question, Makuey was able to act with specific intent, was able to understand the nature and quality of his act, and had the ability to distinguish between right and wrong.

After the bench trial, the court did not accept the insanity defense and found Makuey guilty of murder in the first degree, assault with intent to commit serious injury as a lesser included offense of attempted murder, robbery in the first degree, and burglary in the first degree. The court did not find Makuey guilty

of attempted murder but instead the lesser-included offense because it did not find Makuey intended to kill anyone. The guilty verdict of murder in the first degree was based on the felony-murder rule. Makuey was sentenced to life in prison on the murder conviction, two years on the assault with intent to commit serious injury, and twenty-five year terms each for robbery in the first degree and burglary in the second degree. All of the sentences were to run concurrently except the assault charge, which was made to run consecutive to the other offenses. Makuey has appealed, claiming the sentences imposed constituted cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution and article 1 section 17 of the Iowa Constitution.

## II. Issue Preservation

An illegal sentence can be raised at any time, and unconstitutional sentences are considered illegal sentences. *State v. Bruegger*, 773 N.W.2d 862, 872 (Iowa 2009). The State contends that the rule should be changed to require the constitutionality of a sentence to be contested before the trial court before it can be challenged on appeal. There is some merit to the State's contention that a reviewing court is deprived of the necessary record and fact finding required to fully evaluate a claim of cruel and unusual punishment when the issue is not raised and no record is made at the trial court level. However, if the reviewing court determines the record is necessary, it can remand the matter for that purpose. In *Bruegger*, further record was determined to be necessary and the matter was remanded back to the trial court to provide the desired record. *Id.* at 885-86. The same could be done in this case if determined appropriate. The State also ignores the rather logical conclusion that an unconstitutional sentence

is inherently an illegal sentence. Furthermore, if the record is not adequate to support Makuey's claim, it is prejudicial to him and not to the State. In any event, the Iowa Supreme Court has addressed the issue, and because unconstitutional sentences are illegal sentences, the usual error preservation rules are not applicable. *See State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012).

### III. Scope of Review

Sentences alleged to be unconstitutional are reviewed de novo. *State v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014).

### IV. Discussion

The concept of prohibited cruel and unusual punishment has been broken down into two general categories: (1) as-applied to the individual defendant, and (2) categorical challenges. *See Graham v. Florida*, 560 U.S. 48, 60 (2010). However, the categorical challenge prong has been broken down into several subsets. *See Lyle*, 859 N.W.2d at 385-86. Makuey has raised both the prohibition of cruel and inhuman punishment as contained in the United States Constitution and the Constitution of the State of Iowa. Makuey has not advanced a separate or different interpretation for the Iowa Constitution from the United States Constitution but emphasized that, while we accept the federal standards in Iowa, we apply a more stringent review than would be available under the federal constitution. *See Bruegger*, 773 N.W.2d at 883.

Makuey specifically contends the felony-murder rule justifying the first-degree murder conviction is cruel and unusual as applied to him. The trial court specifically found that Makuey did not intend to murder anyone, thus negating the charge of attempted murder as to Harriet. In essence, this also made his murder

conviction based on Ruppert's death dependent on the felony-murder rule. No birth certificate was produced but the evidence at trial supported that he was at least eighteen on July 2, 2014. He had been born in an Ethiopian refugee camp where the occupants were subjected to repeated violence. He immigrated to the United States in 2000. His mother has separated from her husband, and Makuey lived with her in Des Moines at the time of the criminal act. He previously has lived in Utah, North Dakota, Nebraska, and Arizona, where he lived in a group home for a period of one year. He has attended school only briefly. His mental condition, the court's finding of a lack of intent to commit murder, and the other facts and circumstances attending the crime have already been noted.

Both the state and federal constitutions allow a defendant to challenge his or her sentence under the cruel and unusual punishment prohibition. *Oliver*, 812 N.W.2d at 648-49. A defendant may challenge a sentence under the cruel and unusual prohibition emphasizing the specific facts of the case under the as-applied prong under both the Iowa and federal constitution. *Id.* at 649. In considering the as-applied prong, the first step is the threshold inquiry to determine whether a sentence leads to an inference of gross disproportionality to the crime committed. *Id.* at 650. If gross disproportionality does not exist, no further inquiry is required. *Id.* In determining whether gross disproportionality exists, substantial deference is granted to the legislature. *Id.* Secondly, it is rare that a sentence will be so grossly disproportionate to the offense to satisfy the threshold requirement. *Id.* The third principle, not relevant to the present case, is the court's right and responsibility to consider an offenders criminal history. *Id.* Finally, unique factors may converge to generate a high risk of potential gross

disproportionality. *Id.* at 651. Among the unique factors that can be considered is a broadly-framed crime. *Bruegger*, 773 N.W.2d at 885.

Makuey emphasizes his young age, and our supreme court has held that all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment prohibition. *See Lyle*, 854 N.W.2d at 402. However, in doing so, the court accepted the legislature's bright line rule of under eighteen as the definition of a youthful offender and specifically noted its holding had no application to adult offenders. *Id.* at 403.

Our legislature has prescribed murder in the first degree has been committed when a person kills another while participating in a forcible felony. Iowa Code § 707.2(b) (2014). The cited section does create a broadly-framed crime, and the sentence imposed on Makuey is the most severe sentence permitted under Iowa law. The felony-murder rule obviates the need to provide willfulness, deliberateness, and premeditation under the rationale that certain crimes are so inherently dangerous that when a death results from participation in the defined criminal act that first-degree murder is the appropriate charge. *State v. Heemstra,* 721 N.W.2d 549, 554 (Iowa 2006). The State has wide latitude and power in defining crimes. *State v. Fuhrmann,* 261 N.W.2d 475, 479 (Iowa 1978).

Given the right and power the legislature has to enact a felony-murder rule, life imprisonment is not so disproportionate to the seriousness of the offense so as to shock one's sense of justice. *State v. Rhode,* 503 N.W.2d 27, 41 (Iowa Ct. App. 1993). Few, if any, criminal acts are more deserving of the maximum

penalty that can be imposed than causing the death of another fellow human being.

A defendant who commits an act of lesser culpability that falls under a broad criminal statute and for whom a stiff penalty has been imposed has a right to make a cruel and unusual punishment challenge based on the excessive penalty. *Bruegger*, 773 N.W.2d at 884. We have discussed the facts raised by Makuey challenging the appropriateness of the sentence imposed. The felony-murder rule is clearly a broad classification, and life imprisonment is a severe penalty. Makuey was found to have lacked the intent to commit murder, lessening his culpability, but because of the felony-murder rule and the dangerous activity he was involved in, the intent was in effect implied. The commission of the forcible felony he was participating in and the danger it posed constitute a presumed intent to support the murder charge. We conclude Makuey has not met the required threshold to infer the gross disproportionality required to consider an as-applied attack on the constitutionality of his sentence.

In *Bruegger*, an as-applied attack on the constitutionality of a statute was remanded for hearing before the trial court to determine the facts and circumstances of the situation in order to reach a conclusion as to whether the imposed sentence was cruel and unusual treatment as-applied to him. 773 N.W.2d at 884. We do not interpret *Bruegger* as requiring an evidentiary hearing in all cases where the use of cruel and unusual treatment as-applied is raised on an appeal or otherwise. We believe that, under *Oliver*, such a supplemental hearing is not required when, as in this case, we have enough of the relevant factors to conclude that Makuey cannot meet the threshold test of an imposition

of a punishment that is grossly disproportionate to the crime committed.  *See* 812 N.W.2d at 850.

We affirm Markuey's convictions and sentence.

**AFFIRMED.**