STATE of Iowa, Appellee,

v.

Steven Laverne ZAEHRINGER, Appellant.

No. 67533.

Supreme Court of Iowa.

Oct. 27, 1982.

Randy J. Hohenadel, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Teresa Baustian, Asst. Atty. Gen., and William Davis, Scott County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LARSON, and CARTER, JJ.

REYNOLDSON, Chief Justice.

Defendant was charged with rape, a violation of Iowa Code section 698.1 (1977). We reversed his first jury trial conviction in *State v. Zaehringer*, 280 N.W.2d 416 (Iowa 1979), on the ground trial court erroneously excluded portions of defendant's evidence. District court then granted defendant's mo-

tion to dismiss, based on this court's delay in issuing procedendo and subsequent district court delay. We reversed and remanded for new trial. *State v. Zaehringer,* 306 N.W.2d 792 (Iowa 1981). Defendant now appeals from his second conviction and we again reverse and remand for new trial.

Following the second jury guilty verdict on September 4, 1981, trial court sentenced defendant to a term not exceeding twenty-five years. Defendant's brief asserts trial court erred (1) in permitting defendant to be impeached on the basis of his prior felony conviction for delivering marijuana, (2) in permitting the prosecutor to read into evidence the prior testimony of a witness at the 1978 trial, (3) in admitting testimony regarding the change in defendant's appearance between the time of the alleged offense and the 1981 trial, (4) in imposing a sentence of twenty-five years when the first conviction had resulted in a ten-year sentence.

## I. *Cross-Examination of Defendant about Prior Conviction.*

Trial court overruled defendant's pretrial limine motion that sought to preclude State's inquiry regarding his 1973 felony conviction of marijuana delivery. *See* Iowa Code §§ 204.401(1)(a), 687.2 (1973). The court reasoned the crime involved a "question of dishonesty." It overruled defense objections of irrelevance and improper cross-examination. Defendant admitted he had been convicted of a felony.

Defendant argues trial court erred in permitting this cross-examination because delivery of marijuana does not involve indicia of deceit, fraud, cheating, or stealing. Consequently, he contends, the conviction does not adversely affect his honesty and integrity.

Iowa Code section 622.17 provides:

A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof.

We have interpreted section 622.17 as granting Iowa trial courts discretion to ad-

mit evidence of prior felony convictions to impeach a criminal defendant, if the prior conviction involved dishonesty or false statement, and the trial court determines the danger of unfair prejudice does not substantially outweigh the conviction's probative value. *State v. Conner,* 241 N.W.2d 447, 454 (Iowa 1976); *State v. Miller,* 229 N.W.2d 762, 769 (Iowa 1975); *State v. Martin,* 217 N.W.2d 536, 542 (Iowa 1974). The purpose of admission is not to show the defendant is a bad person, but only to show facts bearing on the question whether the fact finder should believe the testimony. *State v. Martin,* 217 N.W.2d at 540. We have distinguished between acts of deceit, fraud, cheating, or stealing, which in common human experience reflect adversely on honesty and integrity, and acts of violence, which are less likely to do so. *State v. Miller,* 229 N.W.2d at 769; *State v. Martin,* 217 N.W.2d at 540–41. Crimes probative of honesty and integrity include perjury, *State v. Jones,* 271 N.W.2d 761, 766 (Iowa 1978), and felonies involving theft, *State v. Conner,* 241 N.W.2d at 455. We have found the crime of manslaughter inadmissible for purposes of impeachment. *State v. Brewer,* 247 N.W.2d 205, 213 (Iowa 1976).

We have yet to determine whether a violation of our Uniform Controlled Substances Act is a crime probative of veracity. In *State v. Martin,* 217 N.W.2d at 541, we quoted with approval the following language:

A "rule of thumb" ... should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not; traffic violations, however serious, are in the same category.

*Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968).[1] As to the related issue of relevancy, we observed "only such instances as tend to show a lack of truthfulness or disposition [to lie]—*for example, forgery, cheating and the like* —are relevant and material." *State v. Martin,* 217 N.W.2d at 542 (emphasis added).

Our prior cases applying the first prong of *Martin,* "dishonesty or false statement," involved crimes that encompass deceit, fraud, cheating, or stealing in an elemental sense. *See* Iowa Code §§ 720.2 (1981) (perjury requires knowing false statement of material fact or false denial of knowledge), 714.1(1) (intent to deprive another as element of theft), 714.1(2) (misappropriation), 714.1(3) (deception), 714.1(5) (intent to defraud).

In contrast, the delivery of marijuana offense is defined as follows:

[I]t is unlawful for any person to ... deliver ... a controlled substance.

Iowa Code § 204.401(1) (1981).[2] This definition incorporates no deceit, fraud, cheating, or stealing as delineated in *Martin.* Absent direct involvement of one or more of these elements in the offense, the conviction is inadmissible for purposes of impeachment. *United States v. Lewis,* 626 F.2d 940, 946 (D.C.Cir.1980); *United States v. Millings,* 535 F.2d 121, 123 (D.C.Cir.1976); *see State v. Brewer,* 247 N.W.2d at 213.

Our view that narcotic offenses do not meet the *Martin* requirements (dishonesty or false statement) finds support in other jurisdictions. *United States v. Lewis,* 626 F.2d at 946 (distributing heroin); *United*

1. The guidelines laid down in *Gordon,* which we adopted in *Martin,* were formulated before the adoption of Federal Rule of Evidence 609, "Impeachment by Evidence of Conviction of Crime." *See* Pub.L. 93–595, § 1, Jan. 2, 1975, 88 Stat.1935. Rule 609(a) provides:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment

in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

2. The 1981, 1979, and 1977 definitions of the delivery offense are identical. *See* Iowa Code § 204.401(1) (1979); Iowa Code § 204.401(1) (1977).

*States v. McLister,* 608 F.2d 785, 789 (9th Cir.1979) (marijuana possession); *United States v. Hastings,* 577 F.2d 38, 41 (8th Cir.1978) (absent specific underlying facts of dishonesty, narcotic conviction not admissible); *United States v. Millings,* 535 F.2d at 123–24; 3 J. Weinstein & A. Berger, *Weinstein's Evidence* ¶ 609[04], at 609–74 (1981). These cases are bottomed on the finding that mere use or trafficking in drugs, without more, does not involve indicia of deceit, fraud, or dishonesty reflecting adversely on a person's veracity. *United States v. Millings,* 535 F.2d at 123; *Hatchett v. State,* 552 S.W.2d 414, 415 (Tenn.Crim. App.), *cert. denied,* 552 S.W.2d 414 (Tenn. 1977); *see United States v. Hastings,* 577 F.2d at 41 (unless particular conviction rests on facts showing dishonesty or false statement); *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977) (something more than basic conviction is required).

Although several courts have held narcotic convictions admissible for purposes of impeachment, they typically do not examine the impact on veracity at any length, if at all. *See People v. Von Latta,* 258 Cal. App.2d 329, 336, 65 Cal.Rptr. 651, 655 (1968); *Smith v. State,* 6 Md.App. 581, 588–89, 252 A.2d 277, 281 (1969); *People v. Douglas,* 52 Mich.App. 224, 228, 216 N.W.2d 920, 922 (1974); *State v. Knight,* 295 N.W.2d 592, 594 (Minn.1980); *State v. Smith,* 12 Or.App. 112, 117, 504 P.2d 1072, 1074 (1972). When the veracity issue is analyzed, admissibility generally is predicated on the rationale that the offense indicates a disregard for legal duties and societal interests in favor of individual interests, and suggests a propensity to do so on the stand as well. *See People v. Nelson,* 31 Ill.App.3d 934, 938, 335 N.E.2d 79, 83 (1975), *overruled in People v. Siebert,* 72 Ill.App.3d 895, 28 Ill.Dec. 732, 390 N.E.2d 1322 (1979); *People v. Duffy,* 36 N.Y.2d 258, 262, 326 N.E.2d 804, 806–07, 367 N.Y.S.2d 236, 240, *cert. denied,* 423 U.S. 861, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975). The State advances an analogous argument when it suggests the "gist of the . . . offense is the assumption of a position which, under the law, the defendant knows he has no right to assume," thus encompassing elements of dishonesty and false statement. Accepting this theory, however, would preclude any principled differentiation among crimes of varying impact on witness veracity. Under the rule the State advocates felony traffic offenses or violence offenses, along with virtually every other felony offense, would be admissible for impeachment purposes. *Cf. State v. Martin,* 217 N.W.2d at 541 (violence, assaultive crimes and traffic offenses, however serious, generally do not affect credibility).

The State further relies on a federal court interpretation of Federal Rule of Evidence 609(a), which placed various crimes on a continuum with respect to their effect on credibility. Narcotic offenses were placed in a middle ground between offenses clearly probative of veracity, and crimes such as larceny and robbery, which the State notes are not encompassed by the federal rule. *See United States v. Hayes,* 553 F.2d at 827–28. The State argues by analogy that because we have found crimes such as larceny and burglary admissible for purposes of impeachment, the narcotic offenses placed in the middle of the continuum by the *Hayes* court are, a fortiori, admissible under the Iowa standard. The State's theory, however, rests on a shaky foundation. Federal courts are split on the admissibility of larcenous crimes for purposes of impeachment. *E.g., United States v. Fearwell,* 595 F.2d 771, 776 (D.C.Cir.1978) (petit larceny not admissible); *United States v. Donoho,* 575 F.2d 718, 721 (9th Cir.) (petty theft admissible), *vacated on other grounds,* 439 U.S. 811, 99 S.Ct. 68, 58 L.Ed.2d 102 (1978); *United States v. Smith,* 551 F.2d 348, 369 (D.C.Cir.1976) (robbery not automatically admissible); *United States v. Wilson,* 536 F.2d 883, 885 (9th Cir.), *cert. denied,* 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976) (attempted robbery reflects adversely on honesty); *United States v. Ashley,* 569 F.2d 975 (5th Cir.), *cert. denied,* 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978); 3 J. Weinstein & A.

Berger, *Weinstein's Evidence* ¶ 609[04], at 509 73 (1981).

Several federal courts have refused to admit narcotic offenses for impeachment purposes under Federal Rule of Evidence 609(a). *See United States v. Lewis,* 626 F.2d at 946; *United States v. McLister,* 608 F.2d at 789; *United States v. Millings,* 535 F.2d at 123–24. Moreover, federal courts that admit such offenses for impeachment purposes generally do so only upon a preliminary showing by the government that the specific facts of the prior offense involved conduct reflecting dishonesty or false statement. *See United States v. Hastings,* 577 F.2d at 41; *United States v. Hayes,* 553 F.2d at 827. Federal courts' inability to reach a consensus on admissibility of either larcenous or narcotic offenses casts doubt on the viability of the continuum constructed by the court in *Hayes.* Further, that court posited admissibility on a showing of something more than the narcotic offense itself. Thus *Hayes* inferentially supports our finding that the narcotic offense at issue here is not admissible on the issue of defendant's veracity.

The State contends a *Hayes*-type scrutiny of the details of the prior crime must be made, and asserts in this case defendant failed to carry his burden to show that his felony conviction did not involve false statement or dishonesty. There are numerous ways, State argues, that a narcotic offense could involve dishonesty or false statement. We reject this rule for two reasons.

First, the "underlying facts" approach adopted in *Hayes,* requiring trial court to interrupt proceedings and hear argument on the specific circumstances of a prior conviction, runs counter to the principle that evidentiary rules should be convenient, predictable, and mechanically applicable. 3 J. Weinstein & A. Berger, *Weinstein's Evidence* ¶ 609[04], at 609–75 (1981); *see United States v. Lewis,* 626 F.2d at 946 (manner of commission is not the test).

Second, although we have placed the burden of showing that a prior felony conviction does not involve dishonesty or false statement on defendant, *see State v. Lyles,* 225 N.W.2d 124, 127 (Iowa 1974), we have never extended that burden to encompass specific facts of the prior crime. Under our current standard, the burden extends only to argument regarding the effect of the offense in its abstract, generic sense. *See id. (nature* of the prior felony); *State v. Fields,* 223 N.W.2d 197, 198 (Iowa 1975) (showing what *crimes* were involved).

We find no compelling reason to discard our present rule for one that would spin off satellite minitrials delving into contested details surrounding a prior crime. Thus we hold trial court erred in allowing impeachment based on the felonious delivery of marijuana.

Moreover, we cannot characterize this error as nonprejudicial. Defendant's credibility was crucial to the success of his defense that the victim consented to the acts comprising the alleged offense. Because we are required to reverse on this issue, we treat the remaining issues only to the extent required for retrial purposes.

## II. *Defendant's Sixth Amendment Confrontation Rights.*

Complainant's mother, Betty Slyter, testified for the State at defendant's 1978 trial. At the retrial, the State was permitted to read into the record her prior testimony on the basis of the prosecutor's statement she was then outside the state, would not voluntarily return, and the State had attempted to have her served without success. Defendant's objection that his sixth amendment confrontation and cross-examination right would be infringed was overruled. Trial court noted defendant had enjoyed full cross-examination rights at the first trial, but made no finding on the validity of the State's claim of unavailability.

When the State seeks to introduce prior testimony of an unavailable witness, it must show that the witness is in fact unavailable, despite a good faith effort to produce the witness at trial. *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597, 613 (1980); *Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20

L.Ed.2d 255, 260 (1968); *see State v. Holderness*, 191 N.W.2d 642, 648 (Iowa 1971) (witness physically unable to testify). The prosecution bears the burden of establishing the good faith effort. *Ohio v. Roberts*, 448 U.S. at 75, 100 S.Ct. at 2543, 65 L.Ed.2d at 613. The "rule of necessity" that *Roberts* noted was mandated by the sixth amendment, *id.* at 74, 100 S.Ct. at 2538, 65 L.Ed.2d at 613, and must now be applied as limiting the scope of Iowa Code section 622.97 and certain language found in our older decisions interpreting that statute, including *State v. Washington*, 160 N.W.2d 337, 338–40 (Iowa 1968).

Supreme Court decisions have staked out the scope of the effort required of the State. In *Barber v. Page*, the Court found a lack of good faith effort. The state knew the witness was incarcerated in a federal institution in a neighboring state, procedures existed for securing his presence at trial, yet it took no action to produce him. 390 U.S. at 723–24, 88 S.Ct. at 1321, 20 L.Ed.2d at 259–60. In *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), the Court held the state had made a good faith effort. It had sent a subpoena to the witness's last-known out-of-state address and learned that the witness was then residing in a foreign country. The state had no power or procedures available to compel the presence of a witness residing abroad. *Id.* at 212, 92 S.Ct. at 2313, 33 L.Ed.2d at 300–01. In *Ohio v. Roberts*, the transcribed testimony was admitted upon a finding of good faith effort to produce the witness in court. The prosecutor repeatedly had issued subpoenas for service at the witness's last-known address over a four-month period prior to trial. Conversations with the witness's parents indicated this lack of knowledge regarding her whereabouts, despite their affirmative attempt to locate her. 448 U.S. at 75, 100 S.Ct. at 2544, 65 L.Ed.2d at 613.

Here, the State introduced no evidence regarding its efforts in attempting to produce the witness for trial. Rather, the record reflects only unsubstantiated arguments and statements of counsel. *See State v. Watson*, 114 Ariz. 1, 5–6, 559 P.2d 121, 126 (1976), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *State v. Smith*, 58 Ohio St.2d 344, 348, 12 Ohio Op.3d 313, 316–17, 390 N.E.2d 778, 781 (1979) (per curiam), *vacated*, 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1132 (1980); *see Valenzuela v. Griffin*, 654 F.2d 707, 709–10 (10th Cir.1981) (per curiam); *State v. Dreiling*, 601 S.W.2d 660, 661–62 (Mo.Ct.App.1980); *Allison v. State*, 562 P.2d 883, 885 (Okla. Crim.App.1977).

Lack of evidence notwithstanding, counsel's arguments indicate the State was put on notice by a deposition taken approximately fourteen months before retrial commenced that the witness had moved out of state. Nonetheless, the State simply sent out subpoenas in the immediate county area, and took no action regarding the out-of-state lead until use of the Uniform Act to Secure Witnesses From Without the State was precluded by time constraints. *See* Iowa Code ch. 819 (1979). Both Colorado, the state referred to in the deposition, and Texas, the state where the witness ultimately was located, have adopted the uniform act. *See* Colo.Rev.Stat. §§ 16–9–201–204 (1973); Tex.Code Crim.Proc.Ann. Art. 24.28 (Vernon Supp.1982). We observe in passing that the State's failure to launch timely inquiries and processes to obtain an out-of-state witness is a risky oversight. *See People v. Enriquez*, 19 Cal.3d 221, 237, 561 P.2d 261, 270, 137 Cal.Rptr. 171, 180 (1977); *People v. Brown*, 47 Ill.App.2d 616, 621–22, 365 N.E.2d 15, 19, 7 Ill.Dec. 730, 734 (1977). Upon retrial, however, the State may well have this witness available to take the stand. We therefore are not required to determine whether admission of the transcribed testimony was error as depriving defendant of his right to confront the witness, or if so, whether it "was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967).

### III. *Testimony Regarding Defendant's Change in Appearance.*

Over defendant's objections the answers would have "no relevance," the complaining

witness was permitted to testify that defendant "appear[ed] different ... than he did then," and that he then was heavier, and had short hair although his hair at the time of the alleged crime was in a ponytail.

■ The same issue arose at the first trial. On appeal we observed that defendant's appearance at the time of the incident was admissible, within trial court's discretion, as going to the identification of defendant as the assailant. *State v. Zaehringer,* 280 N.W.2d at 421. We also noted that the "necessity or value of such evidences is questionable when the sole issue becomes consent." *Id.* In that decision we relied on *State v. Ostrand,* 219 N.W.2d 509, 513 (Iowa 1974), where we said:

> But should the case develop in the same way on retrial, we think the photograph should not be received in evidence. If defendant admits he sold marijuana as charged, the only purpose we can see for thereafter introducing the picture would be to display to the jury defendant's long hair and beard at the prior time, but defendant is not on trial for that.

As the situation developed in the present case, there was no trial court error. Defendant's pretrial stipulation relating to identity was equivocal. Similar evidence was already in the record without objection when the questions were asked of the complaining witness, as trial court observed. The objection was not on the ground of prejudice, but of relevance. Upon retrial, if defendant clearly concedes the issue of identity on the record, we are confident trial court upon proper objection will not permit the *same testimony if the court* determines its sole purpose is to disclose to the jury defendant was heavier or had a ponytail at the time of the alleged crime.

### IV. *Increased Sentence Following Reconviction.*

Defendant was charged with and convicted of violating Iowa Code section 698.1 (1977), at both the 1978 and 1981 trials. Violation of section 698.1 rendered defendant subject to a determinate sentence of not less than five years, up to a maximum of

**3.** An indeterminate sentence imposed when a determinate sentence is required is indefinite

life imprisonment. Iowa Code § 698.1 (1977). Following the 1978 conviction, trial court sentenced defendant to a term not to exceed ten years. Ten years was the applicable indeterminate term at the time of the 1978 trial, under the 1977 revision of the Iowa Criminal Code, for the offense of sexual abuse in the third degree. 1976 Iowa Acts, ch. 1245, §§ 203, 209 (codified at Iowa Code §§ 902.3, 902.9 (Supp.1977)).

■ Following defendant's second conviction under section 698.1 the trial court, with a different judge presiding, concluded the evidence disclosed defendant had been aided and abetted in commission of the offense. The court found the "equivalent offense" under the revised criminal code to be second-degree sexual abuse, a class B felony. The court then sentenced defendant to a term "not to exceed twenty-five years." [3]

■■ There is nothing in the record before us indicating that defendant at any time requested under Iowa Code section 801.5(2)(b)(2) (Supp.1977) to be sentenced under the provisions of the new code. The applicable statute, Iowa Code section 698.1 (1977), thus called for a determinate, not indeterminate, sentence:

> If any person ravish and carnally know any female by force or against her will ... he shall be imprisoned in the penitentiary for life, or any term of years, not less than five, and the court may pronounce sentence for a lesser period than the maximum, the provisions of the indeterminate sentence law to the contrary notwithstanding.

That the culprit was aided and abetted in performance of the act was of no consequence under the law at the time of this alleged crime, and accordingly could play no part in the jury's guilty verdict. The applicable offense under the revised code therefore was *not* the section 709.3(3) aided and abetted provision, but section 709.4(1), which provides:

and thus void. *State v. Welfort,* 238 N.W.2d 781, 782 (Iowa 1976).

Any sex act between persons who are not at the time cohabiting as husband and wife is sexual abuse in the third degree by a person when the act is performed with the other participant in any of the following circumstances:

1. Such act is done by force or against the will of the other participant.

In applying section 709.3(3), the court on reconviction substituted, for the old offense, the revision's definition of a crime not covered under the old code. *See State v. Buck,* 275 N.W.2d 194, 196 (Iowa 1979). Thus, even if defendant had elected to be sentenced under the revised code, the court upon reconviction erred in passing a sentence based on section 709.3(3). A defendant is not allowed to use the sentencing election and new statutory definitions to his potential benefit. The court, conversely, should be prohibited from applying a sentencing election and a revised statutory definition to a defendant's detriment. *See id.*[4]

This determination makes it unnecessary for us to consider defendant's claim the second enhanced sentence was unconstitutional under the prophylactic rule, announced in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), designed to remove the motive of vindictiveness from resentencing proceedings. In *Pearce* the Court held the reason for imposition of an increased sentence must be shown affirmatively on the record, and must be based on defendant's conduct occurring after the proceeding in which sentence originally was imposed. *Id.* at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. *See Blackledge v. Perry,* 417 U.S. 21, 28–29, 94 S.Ct. 2098, 2100, 40 L.Ed.2d 628, 635 (1974); *Colten v. Kentucky,* 407 U.S. 104, 117, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584, 593 (1972).

We hold the district court judgment must be reversed, and this case remanded for new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

4. *Lopez v. State,* 318 N.W.2d 807 (Iowa Ct. App.1982), appears inconsistent with the hold-

ing in *Buck.* *Lopez* apparently was decided without reference to the *Buck* decision.