STATE of Iowa, Plaintiff-Appellee,

v.

Duane Eddie WRIGHT,
Defendant-Appellant.

84–553.

Court of Appeals of Iowa.

Aug. 29, 1985.

Kjas T. Long, of Gottschalk, Shinkle & Long, Cedar Falls, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Joseph P. Weeg, Asst. Atty. Gen., for plaintiff-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

The defendant and a companion, Rodney Jackson, were accused of robbing and killing a person. At their separate trials for first-degree murder, each intimated that the other had struck the fatal blows.

The defendant was convicted of first-degree murder and was sentenced to life in prison. He has appealed.

The defendant contends the trial court erred by admitting into evidence the transcript of a deposition given by his brother, Donnell Wright. Donnell testified that

shortly after the crime the defendant and his companion had arrived at the brother's house with incriminating physical evidence and had made incriminating statements. The defendant contends he was prejudiced by repetitious hearsay statements contained in the deposition. He also believes the State made insufficient efforts to locate the brother and produce him at trial; the defendant asserts he was thereby prejudiced because the brother was not effectively cross-examined during the deposition proceeding. In addition, the defendant contends that if the deposition was to be admitted, the trial court should also have admitted his proposed opinion testimony by an attorney about the importance of cross-examination at trial rather than in a deposition and about the strategic value of avoiding vigorous cross-examination during a deposition so as not to educate the witness.

The defendant also contends the deposition testimony of his brother should have been suppressed because his brother's testimony was procured by illegal police conduct. The defendant alleges that his brother was the victim of an illegal police stop, an illegal search of his house, an arrest without probable cause and abusive questioning procedures. The defendant concedes that under ordinary principles of standing, he lacks standing to challenge the alleged violations of his brother's rights; however, the defendant asserts his challenge should be allowed in this case either because of the outrageousness of police conduct or because "a man's brother's mind should be a place in which a man has a reasonable expectation of privacy from police intrusion by terror."

The defendant contends the trial court erred by admitting evidence about a statement the defendant made to police while in jail. The defendant complains that the statement was made outside defense counsel's presence, even though counsel was already representing the defendant. The defendant also complains the statement was made without the benefit of current *Miranda* warnings, although the defendant had been given *Miranda* warnings upon his arrest two weeks earlier.

The defendant contends the trial court abused its discretion by admitting photographs of the victim's body and by admitting the victim's blood-soaked clothing. The defendant argues these exhibits were not relevant to any issue at trial and were highly prejudicial.

The defendant contends the trial court erred by admitting allegedly irrelevant evidence. A witness living in the general neighborhood of the crime scene testified that sometime on the night of the crime he had heard unidentified voices talking about avoiding the police.

The defendant contends that the sentence of life in prison is cruel and unusual punishment because it is disproportionate to the facts of this case. This argument rests on the defendant's allegation that his companion was the person who struck the fatal blows.

Finally, the defendant challenges several rulings on instructions. He asserts the trial court should have given his requested instruction that "passive failure to report a known crime does not render one an accomplice or render one guilty of that crime." He challenges the trial court's felony murder instructions; he asserts the court should have told the jury that he could not be convicted of murder unless he either possessed malice aforethought or knew that his companion did. He also challenges an instruction which allegedly permitted the jury to find guilt without finding a unanimous version of the facts.

## I. Admission of Deposition

Defendant raises several issues regarding the use of Donnell Wright's deposition at trial. First, defendant contends admission of the deposition violated his sixth amendment right of confrontation. For reasons stated below, we uphold the trial court's ruling.

■ The confrontation clause requirement is met, even if the witness is not present for the trial, when the following tests are satisfied: (1) the witness is unavailable; and (2) defendant cross-examined

the witness before trial. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

A witness is not unavailable for confrontation clause purposes unless the prosecutor has made a *good faith effort* to have the witness present at trial. *Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543, 65 L.Ed.2d at 613 (emphasis in original); *see also State v. Dean*, 332 N.W.2d 336 (Iowa 1983); *State v. Zaehringer*, 325 N.W.2d 754 (Iowa 1982). Defendant maintains the police were lackadaisical in their efforts to find Donnell and lacked due diligence. We cannot agree.

The record indicates the witness testified at the trial of Rodney Jackson two weeks before the Wright trial was scheduled to commence. The subpoena for the Wright trial was not issued until four days before the trial was to begin. Prior to Donnell's absence, he had cooperated with the authorities, had strong family ties in Waterloo and indicated that he could be found at 112 Phillips. During the four intervening days, the police made numerous attempts to locate Donnell at this address, but their efforts were fruitless. Upon realizing Donnell would not likely be located at 112 Phillips, Donnell's attorney, aunt, sister, and mother were questioned as to his whereabouts. The police even used informants to try to locate Donnell. While we are troubled that the authorities did not subpoena Donnell earlier, there is sufficient evidence to find that the prosecution had no reason to believe Donnell would disappear at this late stage of the proceeding. When a witness leaves town and purposefully avoids detection and the authorities undertake efforts such as this to locate the witness, we conclude that a good faith effort was made and that the witness was "unavailable." *Compare Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (court found witness was unavailable when witness was not at her last-known real address, had left the state, and her whereabouts were unknown even to family members) *with Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (witness was not unavailable when prosecution

knew where the absent witness was living). The diligence used by the prosecution in this instance was much more substantial than in the Iowa cases of *Dean* and *Zaehringer*.

The next issue in determining the admissibility of Donnell's deposition is whether defendant meaningfully cross-examined the witness before trial. Iowa recognizes that deposition testimony used at trial can satisfy confrontation clause requirements. *See State v. Castillo*, 315 N.W.2d 63 (Iowa 1982). Based on the record, we find that Donnell was meaningfully cross-examined during the deposition. At the deposition, Donnell was under oath and defendant's attorney asked him several leading questions which are the hallmark of cross-examination under *Roberts*.

Defendant further contends it was error for the court to exclude testimony from an attorney regarding different motives in cross-examining a witness at a deposition as opposed to such questioning at trial. The trial court found such testimony irrelevant and we agree. The issue is whether cross-examination occurred at all and not the degree of cross-examination the witness was subjected to. As mentioned, cross-examination at the deposition did take place.

Defendant also objected to hearsay statements offered by a police officer on the issue of Donnell's unavailability. On a preliminary question such as unavailability, the court is free to admit hearsay statements. Iowa R.Evid. 104(a); *see also Howard v. Sigler*, 454 F.2d 115, 118–19 (8th Cir.1972). We find no merit in defendant's claim on this issue.

Turning to the substance of the properly admitted deposition, defendant takes the position that the testimony contained a hearsay statement which was repeated seven times during trial.

Specifically, Donnell testified that Rodney and the defendant were in Wright's home when one of them said, "We took this white man's car. I think I hit him too

hard." Donnell did not know who made this statement.

 The statement was either made by Rodney or defendant. If Rodney made the statement, it could be admitted as a co-conspirator's statement. See Iowa R.Evid. 801(d)(2)(E). Defendant contends it was not a co-conspirator's statement because no evidence of a conspiracy was introduced at trial. We disagree.

The rule regarding admissibility of a co-conspirator's statements provides that:

When there is substantial evidence of a conspiracy, whether the offense charged is conspiracy or not, everything said by any conspirator in furtherance of the common purpose is deemed to have been said in behalf of all parties to the conspiracy. A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy is thus admissible against the party as an admission.

Two conditions must be met for this rule to be applicable. First, the statement must have been made during the pendency of the conspiracy. Second, it must have been in promotion of the object or design of the conspiracy.

*State v. Kern*, 307 N.W.2d 22, 25 (Iowa 1981); *citing State v. Kidd*, 239 N.W.2d 860, 864 (Iowa 1976); *see also* Iowa R.Evid. 801(d)(2)(E).

The State demonstrated a conspiracy existed. At a local tavern, Jackson asked the defendant if he wanted a ride home with the victim. The defendant agreed. On the way home, Jackson informed defendant he was going to rob the victim. The victim was then robbed and killed. Shortly thereafter, Jackson and defendant returned home and the statement was made. Moreover, the conspiracy continued while the two were at Wright's home. The statement furthered the conspiracy because it was made when the parties were planning additional activities. Thus, it is appropriate for the co-conspirator statement exception to apply to this situation.

If the defendant made the statement, the analysis is much simpler because it would be a party admission. *See* Iowa R.Evid. 801(d)(2)(A). We also find that, in light of circumstances under which the statement was repeated during the trial proceedings, use of the statement was not unduly repetitious.

## II. Post Information Statements by Defendant

Defendant, two weeks after his arrest and while in jail, asked to speak with the police. Two detectives went to his cell and asked what he wanted. The defendant, who was read his *Miranda* rights upon arrest, asked if he should have his attorney present. The detective said that decision was up to him. Defendant then volunteered a statement which was damaging to his case. Defendant's attorney was not present when these comments were made. However, when the police asked for a written statement, defendant indicated he wanted to check with his attorney and the discussion ceased.

Defendant maintains that statements made in the absence of his attorney should be inadmissible under the fifth and sixth amendments [1].

 For a post-information statement to be admissible, the State must show:

(1) Whether the accused actually invoked his right to counsel, and if so,

(2) the court may admit his responses to further questioning only on finding that he:

(a) initiated further discussions with the police, and

(b) knowingly and intelligently waived the right he had invoked.

*Smith v. Illinois*, —— U.S. ——, ——, 105 S.Ct. 490, 493, 83 L.Ed.2d 488, 493–94 (1984); *accord State v. Johnson*, 318 N.W.2d 417, 435 (Iowa 1982) ("(1) *understood* his right to counsel and (2) affirmatively *relinquished* that right."). While statements which are deliberately elicited are violative of the sixth amendment's right to counsel, *United States v. Henry*,

---

1. It is not disputed that the sixth amendment

right to counsel had attached.

447 U.S. 264, 270–71, 100 S.Ct. 2183, 2186–87, 65 L.Ed. 115, 122 (1980), we find defendant initiated this discussion and waived his *Miranda* rights. After carefully reviewing the record, we are satisfied that defendant understood he had a right to counsel and, nonetheless, waived the right without inducement from the police.

■ As to the fifth amendment claim, we find no merit to defendant's contentions because the defendant initiated the communication. *See Edwards v. Arizona*, 451 U.S. 477, 485–86, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 387 (1981); *State v. Cook*, 330 N.W.2d 306, 312–13 (Iowa 1983) (defendant's volunteered statements are admissible absent interrogation).

### III. Photographs

■ Photographs of the victim's body at the scene and at the autopsy, along with his shirt, were admitted into evidence. Defendant objects to this evidence because it lacks relevancy and the prejudicial effect outweighed its probative value. Admission of photographs is largely within the sound discretion of the trial court. *State v. Hickman*, 337 N.W.2d 512, 516 (Iowa 1983); *State v. Hall*, 235 N.W.2d 702, 720 (Iowa 1975). No doubt the photographs were gruesome, however, the photographs were gruesome because the crime is gruesome. *See State v. Fuhrmann*, 257 N.W.2d 619, 624–25 (Iowa 1977). This evidence was used to show malice aforethought based on the severity of the wounds and was used to establish that two persons, instead of one person, likely participated in stripping the victim. The pictures were taken from various angles to show different aspects of the crime. This evidence was properly admitted.

### IV. Suppression of Evidence

Defendant moved to suppress evidence and testimony from Donnell due to alleged illegal police conduct. The trial court denied defendant's request because he lacked standing. Defendant urges this court to find that he has standing because: (1) a privacy right should exist between communications of siblings and (2) the police's conduct in this instance was "outrageous." We find defendant's claims unwarranted.

■ There is no authority establishing a privilege for sibling communications and we are unwilling to find such a privilege exists. We also conclude defendant lacks standing to challenge the court's ruling on the police conduct under these facts.

### V. Witness Testimony

Defendant further submits that certain irrelevant testimony was erroneously admitted by the trial court. A State's witness, Willie Williams, testified that he lived near the scene of the crime, heard someone on the night of the crime say, "Let's keep your voice down, you're disturbing the peace and you're going to wake up these people and they're going to call the police on us." A second voice responded, "Let's get the hell out of here." Defendant claims the witness did not know whether the voices were men's or women's and how far he was from the crime.

■ Relevancy is defined as "evidence having *any* tendency to make the existence of *any* fact more probable or less probable than it would be without the evidence." Iowa R.Evid. 401 (emphasis added). We find the testimony was undoubtedly relevant. Defendant's objections are directed at the weight the jury should accord such testimony, not its relevance.

### VI. Proportionality

Defendant takes the position that a sentence of life imprisonment for the alleged role defendant played in the murder violates the eighth amendment's prohibition against cruel and unusual punishment. Defendant, in his brief, relies primarily on *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), which held that the death penalty was disproportional punishment for an aider and abettor to a robbery who was shown not to have intended to kill anyone. We believe defendant's position is flawed in several aspects.

First, the Supreme Court has stated that successful challenges to the proportionality of sentences in non-capital cases will be exceedingly rare and specifically noted that:

In *Enmund,* for example, the Court found the death penalty to be excessive for felony murder in the circumstances of that case. But clearly no sentence of imprisonment would be disproportionate for Enmund's crime.

*Solem v. Helm,* 463 U.S. 277, 290, n. 15, 103 S.Ct. 3001, 3009, 77 L.Ed. 637, 649 (1983). Thus, the *Enmund* court felt any term of imprisonment for the defendant was constitutionally permissible.

Second, Iowa courts have upheld life imprisonment without parole for persons who participated in robbery and were convicted of first-degree murder. *State v. Fuhrmann,* 261 N.W.2d 475, 479 (Iowa 1978); *see also State v. Kern,* 307 N.W.2d 29, 31 (Iowa 1981); *State v. Horn,* 282 N.W.2d 717, 732 (Iowa 1979). Defendant's sentence in this case is not a violation of the eighth amendment.

### VII. Jury Instructions

■ Defendant raises two principle issues regarding the jury instructions. First, defendant sought, but did not obtain, a direction indicating that passive failure to report a known crime does not render that person an accomplice nor does it make such person guilty of a crime. We find the failure to give this instruction did not prejudice defendant in any manner. Instruction No. 11 provided:

The guilt of a person who knowingly aids and abets the commission of an offense must be determined solely upon the facts which show the part he had in it, and does not depend upon the degree of another person's guilt.

To "aid and abet" means to knowingly assent to an act or to lend countenance or approval either by active participation in it or by some manner knowingly advising or encouraging the act prior to or at the time of its commission. However, mere proximity to or presence at the scene of the crime is not sufficient.

This instruction more than adequately conveyed to the jury the role an aider and abettor must play as distinguished from a passive onlooker. We find no error.

■ Secondly, defendant claims Instruction No. 8 was deficient because it did not require the jury to find defendant acted with malice aforethought or that he had knowledge of Rodney's malice aforethought. The law in Iowa provides that even if killing was not within the actual contemplation of one of the parties to a robbery, this does not relieve such person of the responsibility if the other party acted with malice aforethought. *State v. Conner,* 362 N.W.2d 449, 455 (Iowa 1985). Thus, this instruction was proper under Iowa law because the jury could find defendant guilty even if defendant was unaware of Rodney's malice aforethought. The alleged error in Instruction No. 10 is similarly addressed by *Conner* and the above-mentioned discussion.

■ Finally, defendant asserts Instruction No. 16 was flawed because the jury was allowed to convict the defendant with a unanimous verdict under either of the submitted theories. The instruction allowed the jury to convict defendant under the felony murder doctrine or premeditated murder doctrine, without unanimity as to the chosen doctrine. These two doctrines are alternative methods for finding *mens rea* and are sufficiently analogous so as to satisfy unanimity requirements. *State v. Williams,* 285 N.W.2d 248, 270 (Iowa 1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980). Defendant's argument that defendant must be found as the aider and abettor or principal is misplaced. Such a finding merely defines the role in the crime, yet the punishment is the same because both parties are tried as principals. *See* Iowa Code § 703.1 (1983). We find no error in these instructions.

AFFIRMED.