STATE of Iowa, Plaintiff-Appellee,

v.

Barry Lynn REDDICK,
Defendant-Appellant.

No. 85–444.

Court of Appeals of Iowa.

March 31, 1986.

John P. Messina, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., and Lee W. Beine, Cedar Co. Atty., for plaintiff-appellee.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

OXBERGER, Chief Judge.

A key witness in the trial of defendant on burglary charges was not present at trial and the court allowed her sworn statement obtained by county attorney's subpoena to be read into the record. The defendant now appeals, saying the court erred in its conclusion that the deposition should be allowed because the witness was unavailable and other requirements were met of the exception to the hearsay rule found at Iowa Rule of Evidence 804(b)(5). We reverse and remand.

The case against defendant on second-degree burglary charges was circumstantial. His vehicle was seen by the police chief sitting near a service station in Durant from 11:45 p.m. on December 6, 1984, until 1:10 a.m. The police chief left, returned at 1:45 p.m. and saw defendant, Barry Reddick, walking from the car toward a nearby residence. He told the officer he was visiting his girlfriend and was having car trouble. After the defendant left, the chief noticed a box of items sitting outside the service station and discovered the station had been burglarized. Among the stolen goods were five or six rolls of dimes, two or three rolls of nickels, and six cartons of Marlboro cigarettes. About an hour after this discovery, the chief saw defendant's car again and stopped it. The defendant and another person, Reyna Garza, were in the car. A pat-down of Reddick revealed a roll of nickels in his front shirt pocket, and six rolls of dimes were found in the passenger compartment. Reddick gave conflicting versions of his whereabouts and further denied owning tennis shoes.

Garza said Reddick did own a pair of tennis shoes and delivered them to the police. It was discovered the shoes matched prints found in the snow at the scene of the crime. Garza was subpoenaed by the county attorney's office and she gave testimony under oath. She repeated the statements outlined above. She said Reddick told her to lie to police about where they were stopped. She also said defendant smoked Marlboro cigarettes, and that defendant had left his residence at 7:00 or 8:00 p.m. the evening of the burglary and returned about 2:30 a.m. She said defendant then asked her to go with him because he had something to show her.

On the last day of trial, Garza was scheduled to appear, but the county attorney revealed she had not shown for the subpoena. He told the court Garza was subpoenaed about four weeks prior to trial and she had indicated she was planning to leave for Mexico with her parents. She had told the attorney, however, she would stay until the proceedings were completed. The attorney went on to tell the court they had contacted her sister that afternoon and discovered Garza had already left for Mexico. Based on this, the county attorney asked that Garza's prior "deposition" be allowed into the record because she was unavailable. The record made with the witness was the result of a county attorney's subpoena and is not a true "deposition." The record was made before Garza was listed as a witness by the State. The defendant was not informed Garza would be a witness until two weeks after the testimony was taken. The court admitted the testimony based on rule 804(b)(5) which provides:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

(5) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will be best served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

The defendant says the court should not have allowed the information into evidence because there was insufficient proof the witness was unavailable as described in the rules and that the interests of justice would be served by admitting the testimony.

 In a footnote to its brief the State makes passing mention that in its opinion, the issue of unavailability was conceded by the defendant's attorney. This is because of the attorney's statement during trial that "clearly the witness is unavailable." A full reading of the discussion between counsel and the court shows, however, that counsel was conceding the witness was out of the country. The attorney went on to argue that the witness was not unavailable for the purposes of the hearsay rule. Counsel could not be interpreted to have meant he was conceding a point he was also arguing. Further, raising this point in a footnote only is insufficient for the State to raise the question of preservation of the claim. *See* Iowa R.App.P. 14(a)(3).

The defendant claims that the courts have indicated "unavailable" for the purposes of the rule is not satisfied merely because the witness does not show for a subpoena, and a witness's absence from the country alone may not be sufficient. We will review the pertinent cases.

We find federal court cases particularly persuasive since our rules of evidence are adopted from the federal rules of evidence. *See* Preliminary Comment, 5A, Iowa Rules of Civ.Proc.Ann. (1984). The federal courts have indicated that there must be a showing of good-faith effort by the government to obtain the presence of the absent witness. *United States v. Inadi,* 748 F.2d 812, 819 (3d Cir.1984). The court noted the case *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) in which the court decided that the witness's confinement in a federal prison in another state was not sufficient unavailability. *Id.* It noted, "The right of confrontation ... may not be dispensed with so lightly." *Id.* (quoting *Barber,* at 725, 88 S.Ct. at 1322, 20 L.Ed.2d at 260). In *Inadi,* the prosecutor gave several reasons why the witness was unavailable. The witness had stated he would go to jail for contempt before voluntarily appearing. *Id.* A subpoena was issued, but the witness did not appear. *Id.* at 820. The court concluded the actions were insufficient, and that the government's reliance upon the witness's assertions he would not testify was not enough. *Id.* "Such predictions by government counsel," the court said, "cannot be recognized as the equivalent of the actual scenario where a witness has appeared in court and refused to testify after a court order. Every veteran trial judge has experienced the situation where a hostile witness discards his 'stonewalling' tactics when faced with an imminent contempt citation." *Id.* The court said a bench warrant should have been applied for and, "We can safely assume that counsel's conduct would have been considerably more aggressive had counsel felt it was necessary in order to 'win.' Under such circumstances, counsel would have sought a bench warrant and refused to assume that the judicial process is so impotent that a witness' hostility is a basis for making no effort." *Id.*

A similar situation was involved in *United States v. Lynch*, 499 F.2d 1011 (D.C.Cir. 1974). The witness was subpoenaed and did not appear. *Id.* at 1023. However, the prosecutor went to some effort to find the witness. Officers were sent to the house of the grandmother of the witness who told them the witness was across the street. *Id.* at 1023. Pounding on the door of this house produced no results. *Id.* A brother of the witness was asked to try to get an answer at the house, also with no results. *Id.* The officers cruised the streets looking for the witness, and returned to the grandmother's house that evening and again in the morning. *Id.* at 1023–24. The court concluded the prosecutor could have done more to obtain the presence of the witness. *Id.* at 1024. The court emphasized it did not find bad faith on the part of the prosecutor; however, it stated, "We are not prepared to equate 'unavailable' with 'evasiveness.'" *Id.*

Our supreme court has indicated a sheriff's attempt to serve a subpoena on a witness, only to find he was "out of state—fishing" is insufficient search to make the witness unavailable. *State v. Dean*, 332 N.W.2d 336, 338 (Iowa 1983). The court noted the "Supreme Court's stringent requirements on the prosecution to locate and secure the witness for trial before using prior testimony." *Id.*

In *Government of Virgin Islands v. Aquino*, 378 F.2d 540, (3d Cir.1967), the witness was not considered unavailable although out of the country. The court noted, "Absence beyond the service of a subpoena, however, is not a full answer to the question. There may be cases in which the witness might be willing to come into the jurisdiction to testify if his expenses of travel are paid. Is it enough, then, merely to prove that the witness is beyond reach of subpoena, without showing any effort to secure his voluntary return and without any indication that if he had been asked he would have refused to do so"? *Id.* at 550. The court answered in the negative. *Id.*

■ Given the stringent standard which must be met to show a witness is unavailable, we cannot find here that this witness was unavailable for the purpose of the rule of evidence. The witness had indicated a willingness to appear in court to testify, and in fact had volunteered to postpone her trip to Mexico. There is no showing she would not voluntarily return. Although this court can guess that the trip to Mexico is permanent and not a temporary trip, there is nothing in the record to support such a conclusion. The State points to the fact that the defendant did not ask for a continuance when the issue arose. However, it is the State's burden to prove a witness is unavailable and that it used diligence in trying to find the witness. *State v. Zaehringer*, 325 N.W.2d 754, 759 (Iowa 1982).

The State indicates that our scope of review is limited to correcting errors of law and determining whether the trial court abused its discretion since no constitutional issues were raised by defendant. *State v. Harrington*, 349 N.W.2d 758, 761 (Iowa 1984). We consider this more limited review, but hold that the applicable law must lead this court to the conclusion the State did not sufficiently show the witness was unavailable as described in the rules of evidence. We reverse the conviction and remand for a new trial.

REVERSED AND REMANDED.

HAYDEN, J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

Garza had been subpoenaed and did appear earlier pursuant to a county attorney's subpoena. Garza had been subpoenaed to appear for trial four weeks earlier. She was to appear at 11:00 a.m. At 3:45 p.m. the county attorney advised the court when she failed to appear at 11:00 a.m. he had law enforcement agencies attempt to ascertain her whereabouts. There was no one at her former residence. She had given the county attorney her sister's phone number. When called her sister said she had left the country and was *somewhere* in Mexico with her parents.

Defendant's trial attorney stated on the record: "... I am not questioning on behalf of Mr. Reddick the unavailability of the witness...." Also, he later said: "I think clearly the witness is unavailable...."

I first determine there was a good faith effort made to have the witness at trial and she was unavailable. *See State v. Wright*, 378 N.W.2d 727, 730–31 (Iowa App.1985). Furthermore, the issue of unavailability was conceded by defendant in the trial court and is not properly before us.

The defendant objected to the deposition,[1] if it is a deposition, because he contended the state should have used their powers to keep the witness in Iowa. However, the defendant failed to argue this issue on appeal.

---

1. In *State v. Cuevas,* 322 N.W.2d 910, 912 (Iowa App.1982) we determined RCP 144(c) on use of depositions in trial must be interpreted so as to require in addition to the requirement of the civil rule that the state must show a good faith effort to obtain the witnesses presence at trial.