**IN THE COURT OF APPEALS OF IOWA**

No. 15-0971
Filed November 9, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**EDDIE VIRGIL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, George L.

Stigler, Judge.


        Defendant appeals his conviction for domestic abuse assault, third

offense. **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg,

Assistant Attorney General, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik and Richard Bennett,

Assistant Attorneys General, and Lucas Sterbick, Student Legal Intern, for

appellee.



        Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Eddie Virgil appeals his conviction for domestic abuse assault, third offense. Virgil claims the district court improperly allowed prior testimony to be read at his second trial, there was insufficient evidence to find a domestic relationship, trial counsel was ineffective by failing to object to jury instructions, the district court abused its discretion in allowing two jurors to be challenged for cause, and a host of issues raised in a pro se brief. We affirm.

## I.     Background Facts and Proceedings

Virgil began a romantic relationship with his ex-girlfriend, N.J., in the fall of 2013. He stayed at her house three or four nights a week and kept a few personal items there but did not contribute to household expenses. The couple broke up in May or June 2014. On October 14, 2014, N.J. arrived at the hospital with a black eye and a migraine. She reported Virgil had approached her on the street after she had dropped her child off at school and Virgil had begun yelling at her before following her into the home, assaulting her, and running away immediately after.

Virgil's first trial was held January 20 and 21, 2015, and resulted in a mistrial as the jury was unable to reach a verdict. Virgil moved for a judgment of acquittal on the domestic enhancement of the assault charge, claiming the jury had unanimously found no domestic relationship. The district court denied the motion, ruling the jurors had made no formal findings on any matter, as the statements Virgil relied on were made to the attorneys and the court during an informal discussion following the mistrial.

At voir dire of the second trial, which was unreported, two potential jurors were removed for cause. The jurors stated they could not be impartial if the ex-girlfriend did not testify. At trial the State was unable to locate the ex-girlfriend. The district court found she was unavailable and allowed her testimony from the first trial to be read into evidence over defense counsel's hearsay objections. The jury returned a guilty verdict and Virgil now appeals.

## II. Use of Prior Testimony

In the case of hearsay rulings, our review is for correction of errors at law because admission is prejudicial to the non-offering party unless the contrary is shown. *State v. Ross*, 573 N.W.2d 906, 910 (Iowa 1998).

Virgil claims the district court erred in finding N.J. to be unavailable and in allowing her testimony from the first trial to be read into the record. Witnesses are unavailable when "[they are] absent from the trial or hearing and the proponent of a statement has been unable to procure the declarant's attendance by process or other reasonable means." Iowa R. Civ. P. 5.804. The State is required to show the witness is unavailable and must show a good faith effort to procure the witness for trial. *State v. Zaehringer*, 325 N.W.2d 754, 759 (Iowa 1982). We have previously noted: "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *See, e.g.*, *State v. Music*, No. 08-0993, 2009 WL 1676898, at *1 (Iowa Ct. App. June 17, 2009).

Here, the State issued subpoenas for N.J., which were never successfully served. The Black Hawk County Sheriff's Office was unable to locate the witness at her home address, which was vacant, nor could she be located at her mother's

residence. The county attorney's investigator attempted to make contact with N.J. by phone and email to no avail. The entire Waterloo Police Department was also brought in during an attempt to serve the subpoenas to N.J. at the day care facilities where her children were thought to attend. Continued investigations failed to reveal an alternate address for N.J.

The State attempted to locate N.J. at her residence, contacted and questioned family, recruited both the police and sheriff's departments, attempted service multiple times, continued to search for alternate addresses, and attempted to serve N.J. at several day care facilities. We find these efforts reasonable and sufficient to find N.J. unavailable under the rule. *See State v. Wright*, 378 N.W.2d 727 (finding witness unavailable after attempts to locate at home address, questioning family, and using informants).

### III. Evidence of Domestic Relationship

A defendant's challenge to the sufficiency of the evidence is reviewed for correction of errors at law. *State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008) (citation omitted). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We consider the entirety of the record, including exculpatory evidence. *State v. Carter*, 696 N.W.2d 31, 36 (Iowa 2005). "Evidence is substantial 'when a reasonable mind could accept it as adequate to reach the

same findings.'" *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys.*, 526 N.W.2d 284, 287 (Iowa 1995) (citation omitted).

Our supreme court has established a non-exhaustive list of factors used to determine if parties were cohabitating. The factors include:

> 1. Sexual relations between the parties while sharing the same living quarters.
> 2. Sharing of income or expenses.
> 3. Joint use or ownership of property.
> 4. Whether the parties hold themselves out as husband and wife.
> 5. The continuity of the relationship.
> 6. The length of the relationship.

*State v. Kellogg*, 542 N.W.2d 514, 518 (Iowa 1996)

During the relationship, Virgil and N.J. had sexual relations, he stayed at the house three or four nights a week, arriving after the children had gone to bed and leaving after the children had gone to school. Virgil also kept a cell phone and some clothes at N.J.'s home. He also provided child care on most days. N.J. testified she believed he had given out her address as his own. He ate meals, slept, and showered at the house. She also testified Virgil was "pretty much" free to come and go as often as he pleased.

However, Virgil contributed nothing to the expenses of the house and had no ownership of the property. The relationship was described as "on and off" during the trial and lasted no more than eight months. Virgil also stayed with family members approximately half of the week and kept only his clothes and cell phone at N.J.'s home. Additionally, he was not allowed to bring friends or family to the house.

At the first trial N.J. testified Virgil had not been living with her. However, after further questioning she admitted he had been living with her. She stated she had lied earlier because she was living in section 8 housing, which prohibited non-related persons from living in the house and she feared losing her home and making her four children homeless if it was known that Virgil lived with her.

The *Kellog* court set out the above factors to ensure, at one extreme, "mere roommates" are not found to be cohabiting and also to confirm cohabitation does not require a de facto marriage relationship. *Kellogg*, 542 N.W.2d at 518. We find the amount of time spent at the home, the storing of property, the apparent understanding of the parties, and the provision of child care provide sufficient evidence under the non-exclusive *Kellog* factors.

## IV. Ineffective Assistance of Counsel

We review claims of ineffective assistance of counsel de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). "To prevail on a claim of ineffective assistance of counsel, the applicant must demonstrate both ineffective assistance and prejudice," and these elements must be proven by a preponderance of the evidence. *Id*. at 142.

Virgil claims his trial counsel was ineffective in failing to request a jury instruction defining "household member." Words with an ordinary usage do not need to be defined; however, a word given a technical or legal definition requires a definition. *Kellog*, 542 N.W.2d at 516. In this context "household member" has a specific, technical, and legal definition under Iowa Code section 236.2(4) (2013) and a further refined definition under *Kellog* as discussed above. We find

failing to request the definitional jury instruction as to "household member" is a failure by counsel to perform an essential duty. *State v. Vela*, No. 10-0662 2011 WL 768768, at *3 (Iowa Ct. App. Mar. 7, 2011).

However, we find Virgil has failed to establish prejudice. The State presented evidence of the domestic relationship with testimony on several of the *Kellog* factors, as previously discussed. Virgil's attorney also elicited testimony as well as effectively challenged the witnesses presented by the State. However, because there was sufficient evidence presented by the State as stated above, Virgil is unable to establish prejudice. *See id.* at *4 (holding evidence was insufficient to convict under *Kellog*).

## V.    Challenge of Jurors for Cause

Challenges for cause during jury selection are reviewed for an abuse of discretion. *State v. Mitchell*, 573 N.W.2d 239, 240 (Iowa 1997). Virgil claims the removal of two jurors for cause without allowing rehabilitative questioning was an abuse of the district court's discretion. Voir dire was not recorded during Virgil's second trial and no record exists showing any objection to the strikes.[1] "[A] defendant claiming error has an obligation to provide the court with a record that discloses the error claimed." *State v. Ruiz*, 496 N.W.2d 789, 791 (Iowa Ct. App. 1992). Virgil has therefore failed to show the district court erred in allowing the potential jurors to be dismissed for cause.

Even if we could review this issue, we would affirm the district court. The evidence presented by Virgil does not indicate the jurors could have been

---

[1] If a transcript is not available parties may develop a statement of the proceedings in accordance with the provisions of Iowa Rule of Appellate Procedure 6.806.

rehabilitated. Instead, the little evidence we are given to review indicates the district court properly exercised its authority to remove the jurors for cause.

## VI. Pro Se Issues

Virgil filed a pro se brief raising thirteen claims. Three of those claims, the use of previous testimony, insufficient evidence of a domestic relationship, and the challenge of jurors for cause were raised by his appellate counsel and have been addressed. Virgil's claims of exculpatory evidence, his right of confrontation, improper introduction of evidence of his criminal history, and the improper stipulation to prior abuse convictions are waived for failure to argue the issues due to Virgil only addressing them in one or two sentences each. "When a party, in an appellate brief, fails to state, argue, or cite to authority in support of an issue, the issue may be deemed waived." *State v. Adney*, 639 N.W.2d 246, 250 (Iowa Ct. App. 2001). Virgil's claim of trial counsel's failure to take depositions is waived for failure to cite authority. *Id.* The claim of improper jury instructions is waived for lack of objection at trial. *See Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012). Virgil's claim the prosecutor acted improperly during voir dire is waived because no record of the alleged conduct is in evidence as voir dire was not reported. *See State v. Douglas*, 485 N.W.2d 619, 625 (Iowa 1992) ("We will not predicate error on speculation."). The claim the jury was not allowed to review evidence is waived as this claim is based on the first jury trial, a mistrial, which is not the subject of this appeal. We find Virgil raises two claims in his pro se brief which are not waived and are properly preserved, the

competency of a witness at his second trial and the district court's denial of motion for judgment of acquittal.

## A. Competency of the Witness

The district court's evidentiary rulings are reviewed for an abuse of discretion. *State v. Richards*, 809 N.W.2d 80, 89 (Iowa 2012). We will reverse the district court only when the evidentiary rulings are based upon untenable or clearly unreasonable grounds. *Id.* Virgil claims Megan Semper's testimony should have been excluded under Iowa Rule of Evidence 5.602, which provides, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." He claims her entire testimony was based on hearsay and she has no personal knowledge of the matter.

Some portion of Semper's testimony was based on hearsay, and Virgil's attorney objected on those grounds throughout the testimony. However, much of Semper's testimony was based on her own personal knowledge. Semper made personal observations of N.J.'s voice and demeanor when N.J. called to tell Semper she had been assaulted. Semper also personally observed N.J. when accompanying her to the hospital and staying with her for some time to care for the children. Therefore, Semper's testimony is appropriate under the Iowa Rules of Evidence.

**B. Motion for Judgment of Acquittal**

Challenges to a district court's denial of a motion for judgment of acquittal are challenges to the sufficiency of the evidence and are reviewed for correction of errors at law. *State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005).

Virgil claims the district court erred by denying his motion for judgment of acquittal. The jury in Virgil's first trial declared it was deadlocked and a mistrial was granted. Under questioning from the court, the jury reported three were in favor of conviction and nine for acquittal. Defense counsel filed a motion for judgment of acquittal only on the issue of the domestic enhancement the next day. At the hearing on the motion, the record reflects an unrecorded informal discussion between counsel, the court, and the jury as to the nature of the split in the jury. While defense counsel argued the jury had indicated they all agreed there was no domestic relationship, the court had a different understanding of the jury's statements.

We hold a jury's deliberation in high regard and as such will not disturb the conclusions of a jury, even if those conclusions result in a deadlock. *See Reardon v. Hermansen,* 275 N.W. 6, 10 (Iowa 1937) (holding even a jury verdict going against the weight of evidence should be upheld); *see also Todd v. Branner,* 30 Iowa 439, 440 (Iowa 1871) (holding a jury verdict will be overturned only when the decision is "unjust, and we are well satisfied of the insufficiency of the evidence to convince the judgment, reason and conscience of the triers"). Therefore, we will not disturb this deadlock and substitute counsel's recollection of the jury's statement. Additionally, in order to find error we would be required to

rely on the contradictory memories of counsel and the court and make a determination of the truth. This would be based wholly on our determination of whether the court or counsel could better remember the jury's informal statement. Again, we must decline to "predicate error on speculation." *Douglas*, 485 N.W.2d at 625.

We affirm the defendant's conviction.

**AFFIRMED.**

Vaitheswaran, P.J., concurs; Potterfield, J., dissents.

**POTTERFIELD, Judge** (dissenting).

I respectfully dissent from the majority's view that Virgil failed to prove prejudice resulted from his counsel's failure to request the court instruct the jury on the specialized meaning of "household members." The evidence was strong on the issues of identity and the assault. However, it was a toss-up on the element of "household member". The jury sent a question to the judge during their deliberations about the meaning of "reside." Even then, counsel failed to request the uniform instruction with the *Kellogg* factors. *See State v. Kellogg*, 542 N.W.2d 514, 518 (Iowa 1996). The court replied to the jurors to use the "ordinary every day meaning" of reside. I would find Virgil has proved not only that his counsel was ineffective but also that prejudice resulted.